# G. C. HAMILTON ET AL. v. CLARION ETC. R. CO. ET AL.

## APPEAL BY S. S. JACKSON ET AL. FROM THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 4, 1891—Decided October 5, 1891.
[To be reported.]

(a) Judgment creditors of a railroad company, created by the merger and consolidation of two other companies, under the provisions of the act of May 16, 1861, P. L. 702, and its supplements, filed a "creditors' bill" against the railroad company and its stockholders, for a decree subjecting the unpaid stock subscriptions to the payment of the corporate debts.

(b) The bill averred and the master found that the corporation defendant was insolvent, and that certain of the stockholders defendant were subscribers for the stock of one of the prior companies merged and consolidated, and as such were liable to the extent of their subscriptions unpaid for the ascertained claims of the plaintiffs. A final decree was entered accordingly.

Statement of Facts.

(c) Defendants appealing from the decree set up that neither the prior companies merged and consolidated, nor the corporation defendant itself, ever had any lawful corporate existence; that the said defendants never were stockholders in the defendant company, and that the latter was never so far organized that they could have obtained shares of stock therein:

1. The corporate existence of a corporation de facto cannot be inquired into collaterally: Cochran v. Arnold, 58 Pa. 399. Much less can such a corporation, or a stockholder therein, set up a defect of incorporation against creditors who have contracted with it on the faith of its lawful corporate existence.

2. By force of the articles of consolidation and the acts of assembly, the subscriptions to the stock of one of the prior companies enured to the benefit of the consolidated company, so as to become assets in its hands for the payment of its debts; and the subscribers thereof became liable to the creditors, to the amount of their unpaid subscriptions.

3. Such subscribers, it seems, were not released by a certain contract between the consolidated company and an improvement company, made immediately after the consolidation, whereby the latter company was to construct the railroad in consideration of paid-up capital stock, etc., no portion of the road ever having been constructed thereunder.

4. A decree ascertaining the demands of the plaintiffs in the bill, the amounts unpaid upon the subscriptions of the stockholders defendant, and adjudging that the latter pay said demands to the extent of their unpaid subscriptions, with a provision to secure contribution among themselves in due proportion, is not erroneous.

5. The administrator of a deceased stockholder, domiciled and receiving his letters in another county, may properly be made a co-defendant in the bill, when duly served under § 1, act of April 6, 1859, P. L. 387; and, as it is not a question of distribution, but of the fixing of a liability, he may be joined in the final decree entered.


Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

Nos. 45, 53 July Term 1890, Sup. Ct.; court below, No. 20 June Term 1887, C. P. in Equity.


On March 28, 1887, George C. Hamilton, W. A. Irwin and Almon B. Hamilton, " suing as well for themselves as for all other creditors of the Clarion, Mahoning & Pittsburgh Railroad Company, who, contributing to the expenses of this suit, may become parties thereto," filed a bill in equity against the Clarion, Mahoning & Pittsburgh Railroad Company, S. S. Jackson, R. C. Winslow, E. A. Litch, admr. of Thomas K. Litch, deceased, and others, averring in substance as follows :

That the Mahoning & Susquehanna Railroad Co. was incor-. porated by the special act of April 19, 1854, P. L. (1855) 687, and that on or about November 22, 1881, the Conewango & Clarion Railroad Co. was duly incorporated under the provisions of the act of April 4, 1868, P. L. 62; that by articles of agreement, made on or about December 6, 1881, the said railroad companies, by virtue of the act of May 16, 1861, P. L. 702, and its supplement of April 10, 1869, P. L. 24, were merged and consolidated into one company, called the Clarion, Mahoning & Pittsburgh Railroad Company.

That the capital stock of the said Conewango & Clarion R. Co. was divided into 20,000 shares of the par value of $50 each, and by the charter thereof was subscribed for by certain persons named in the bill, among whom were

| | |
|---|---|
| S. S. Jackson, . . . . . . | 100 shares. |
| R. C. Winslow, . . . . . . | 150 " |
| Thomas K. Litch, . . . . . | 300 " |

That, by force of the said merger and consolidation and of the statutes, such of the defendants as were subscribers to the stock of the Conewango & Clarion R. Co. became subject to all liabilities, conditions and penalties, in the same manner and with like effect, as were the original subscribers to the stock of the aforesaid Clarion, Mahoning & Pittsburgh R. Co., the corporation defendant, and that the amounts for which the several stockholders defendant were liable were as set forth by name and amount in the bill, including

| | | | |
|---|---|---|---|
| S. S. Jackson, . . . | 100 shares. | $ 5,000 |
| R. C. Winslow, . . . | 150 " | 7,500 |
| Thomas K. Litch, . . . | 300 " | 15,000 |

That the plaintiffs were creditors of the corporation defendant, for wages, work and labor done and materials furnished, as follows: George C. Hamilton, judgment, $4,025.90, interest and costs; W. A. Irwin, judgment, $264.42, interest and costs; Almon B. Hamilton, judgment, $546.90, interest and costs; and that "other creditors also exist, holding large claims against the corporation defendant."*

---

* Only one other creditor afterwards became a party plaintiff to the bill, and as to him the bill was dismissed on final decree. Observe, that the master does not find there were other creditors, and that the bill was filed " by or in behalf of all the creditors: " see opinion, post 60, and Lane's App., 105 Pa. pp. 60, 67.

That writs of fieri facias had issued out of the Court of Common Pleas of Warren county, upon the judgments of George C. Hamilton and Almon B. Hamilton, and had been returned unsatisfied; that the said corporation defendant was wholly insolvent and had no available assets other than the amounts due upon its capital stock, and had taken no steps to enforce payment from the stockholders defendant of their unpaid subscriptions, or of so much thereof as was necessary to liquidate its indebtedness.

Upon these averments, the bill prayed:

1. That the rights of the parties be declared, in the premises.

2. That an account be taken of the amounts remaining unpaid upon the capital stock of the corporation defendant.

3. That an assessment be levied, in such a manner and form as this court may direct, for the amounts due upon the subscriptions aforesaid of the stockholders defendant respectively, or so much thereof as may be necessary to pay the ascertained debts of the said corporation defendant, and that thereupon the said stockholders defendant may be decreed to pay such respective balances so as aforesaid assessed.

4. That a receiver be appointed to collect and receive all and singular the assets, books, papers and other property of the said corporation, and also all sum or sums due by the said stockholders defendant, or any of them, for their unpaid stock subscriptions, or for any balances thereof, or such part or parts thereof as may be necessary and sufficient to liquidate the ascertained indebtedness of the said corporation defendant, together with such other powers and duties as the court may deem just and equitable.

5. That such other and further relief be granted, as may be necessary and expedient.

On December 30, 1887, defendants, S. S. Jackson, R. C. Winslow, and E. A. Litch, administrator of Thomas K. Litch, deceased, filed answers. The cause was put at issue on February 9, 1888, and referred to *Mr. D. I. Ball*, as examiner and master. The defendant railroad company filing no answer, a decree pro confesso was taken against it, and on November 26, 1888, it was ordered that " the matter and allegations contained in the bill in this cause, in so far as the same relates to the said

corporation defendant, shall without further proof be taken as admitted."

On March 13, 1890, the master filed a report presenting the following

### FINDINGS OF FACT.

The Mahoning & Susquehanna Railroad Co. was incorporated by the act of assembly approved the nineteenth day of April, 1854, P. L. (1855), 687. By that act, certain persons therein named were " appointed commissioners to open books, receive subscriptions of stock, and organize a company, by the name, style and title of the Mahoning & Susquehanna Railroad Co., with all the powers and subject to all the duties, restrictions and regulations prescribed by an act of assembly of this commonwealth, entitled ' An Act regulating railroad companies ' approved the nineteenth day of February, Anno Domini 1849, so far as the same are not altered and supplied by the provisions of this act." The capital stock of the company was fixed by the second section of said act at 6,000 shares of $50 each, with authority to increase it to $2,000,000.

By a supplement to said act, approved the twenty-fourth day of March, 1865, P. L. 761, another set of persons were named as " commissioners, with all the powers mentioned in said act; and the time of opening or completing said road, shall be extended for ten years from the passage of this supplement." A new set of commissioners, including some of the older ones, was named by another supplement to said act, approved the ninth day of April, 1869, P. L. 755, " with all the powers mentioned in said act." The capital stock of said company was fixed at 1,000 shares of $50 each, with authority to increase it to $2,000,000. Section 5 provided, " that the time of building and completing said road shall be extended for the period of five years." By another supplement to this act, approved the third day of April, 1872, P. L. (1873), 1064, " The time for building and completing said road shall be extended for the period of five years from the passage of this act." By a further supplement to said act, approved the fifth day of April, 1873, P. L. 537, power was given to the president and directors of said company to increase the capital stock of said company to $5,000,000 ; and, " the time of building and completing said road shall be extended for the period of four years."

Master's Report.

What, if any, steps were taken to organize the Mahoning &
Susquehanna Railroad Co., or what was done by it, does not
appear from the evidence, except as appears in the agreement
of merger hereafter to be referred to.   Neither does it appear
who were the stockholders of said Mahoning & Susquehanna
railroad, nor whether there are any unpaid subscriptions to its
capital stock.   No part of the proposed railroad was ever built
or completed.

The Conewango & Clarion Railroad Co. became incorporated
by articles of association filed in the office of the secretary of
the commonwealth on the twenty-second day of November,
1881.   The president named in the articles of association, to
manage its affairs for the first year, was C. Powell Karr; and
the board of directors were Charles W. Stone, Henry E. Brown,
Wm. H. Copeland, Henry J. Miller, Benjamin F. Neiswender,
and Theodore E. Smith.   The amount of the capital stock of
said company was fixed at $1,000,000, to consist of 20,000
shares, of the par value of $50 each share.   The names of the
subscribers to said articles of association, and the number of
shares subscribed for by each, are as follows :

| Stephen S. Jackson, | Brookville, Pa. | 100 shares. |
| R. C. Winslow, | Punxsutawney, Pa. | 150 " |
| Thos. K. Litch, | Brookville, Pa. | 300 " |

\*       \*       \*       \*       \*       \*       \*       \*

The total number of shares of the capital stock, agreed to
be taken by the subscribers to said articles of association, is
4,003 shares, of the par value of $200,150.

There were no agreements to take stock in the Conewango
& Clarion Railroad Co. or any subscriptions to or for the stock
thereof, other than what appears on these articles of association.

The Mahoning & Susquehanna Railroad Co. and the Cone-
wango & Clarion Railroad Co., by a joint agreement bearing
date the sixth day of December, 1881, and filed in the office of
the secretary of the commonwealth, at Harrisburg, on the
twenty-first day of the same month, were consolidated and
merged into one company, therein named the Clarion, Mahon-
ing & Pittsburgh Railroad Company.

In this joint agreement, these two companies undertake " to
unite, merge and consolidate together all the corporate rights,
powers, privileges, franchises, corporate stock and property of

the Mahoning & Susquehanna Railroad Co. and the Conewango & Clarion Railroad Co., so that the two companies may be consolidated, and all the corporate rights, powers, franchises, stock and property, now vested by law in the Mahoning & Susquehanna Railroad Co. and in the Conewango & Clarion Railroad Co. may be united, merged and consolidated together, so as to form and be one company, to be called the Clarion, Mahoning & Pittsburgh Railroad Co., as by the laws of this commonwealth is provided, on the terms and conditions following, to wit:

"1. That the Mahoning & Susquehanna Railroad Co. and the Conewango & Clarion Railroad Co. shall each deliver up and surrender all their books, accounts, stock certificates, stocks and property, rights and franchises, of every description whatever, to the Clarion, Mahoning & Pittsburgh Railroad Co.; and all the stock of the two first mentioned companies actually subscribed for shall be canceled.

"2. That the Clarion, Mahoning & Pittsburgh Railroad Co. shall and will issue to the several holders and owners of, or subscribers to the stock of the Mahoning & Susquehanna Railroad Co. and the stock of the Conewango & Clarion Railroad Co. and the several owners and holders of or subscribers to the stock of the two last named companies shall be entitled to receive for every share thereof, one share of the capital stock of the Clarion, Mahoning & Pittsburgh Railroad Company."

This joint agreement is signed by Stephen S. Jackson as president, and R. C. Winslow as secretary, for the Mahoning & Susquehanna Railroad Co., and by C. Powell Karr as president, and H. E. Brown as secretary, for the Conewango & Clarion Railroad Co., each of whom are defendants in this suit. S. S. Jackson was named as president, Wm. H. Paulding as treasurer, and R. C. Winslow as secretary of the consolidated company. Of the other defendants in this suit, Rasselas Brown, F. H. Rockwell, Thomas K. Litch, Wm. M. Ralston and C. Karr were among the directors named in the agreement of consolidation and merger.

This agreement recites the several acts of assembly heretofore mentioned, relating to the Mahoning & Susquehanna Railroad Co., "and the due performance of all things thereby required." It also refers to letters-patent issued to the said company under the hand of the governor and the seal of the

commonwealth, and to the date of said letters-patent as December 12, 1870.

The amount of capital stock of the Clarion, Mahoning & Pittsburgh Railroad Co. was fixed by the agreement of consolidation and merger at 120,000 shares, of the par value of $50 each. All of these shares of stock were not subscribed for. Corydon Karr testifies that he thinks none of this stock was subscribed for after the date of said agreement, December 6, 1881. It does not, in fact, appear from the evidence that any of it was subscribed for at any time.

By an instrument bearing date the twenty-first day of December, 1881, the Clarion, Mahoning & Pittsburgh Railroad Co. entered into an agreement with the Mahoning Improvement Company, to construct the road of the former company. That part of said agreement material to this issue, if any, is the following :

" Now, therefore, in consideration of the premises and the sum of one dollar each by the other in hand paid, the receipt whereof is hereby acknowledged, said party of the second part hereby agrees to construct the said railroad for said party of the first part between the points above named, and to make all preliminary and other surveys therefor, furnish all the materials of every nature and description required in the construction of said railroad, in consideration of the payment to said party of the second part of the following considerations, viz. :

" A. Full-paid capital stock of said railroad company, to the amount of $6,000,000.

" B. First mortgage thirty-year six per cent bonds of said railroad company, to the amount of $4,500,000.

" C. All donations. subsidies, grants of land and other property, which may be made, or issued to, or obtained by said railroad company in consideration of the building of said road.

" In consideration of the performance by said party of the second part of its obligations and undertakings above specified, and the construction and completion of said railroad between the points named, said party of the first part hereby agrees to pay to said party of the second part $6,000,000, in the full-paid capital stock of said railroad company, and $4,500,000 in the first mortgage thirty-year six per cent bonds of said railroad

Master's Report.

company, and all the donations, subsidies, grants of land and other property which may be acquired by said railroad company in consideration of the construction of said railroad."

This agreement is signed by S. S. Jackson, president, and R. C. Winslow, secretary, on behalf of the Clarion, Mahoning & Pittsburgh Railroad Co., and by C. Powell Karr, president, and B. F. Neiswender, secretary, on behalf of the Mahoning Improvement Company.

The Mahoning Improvement Co. never did anything under this contract, except to pay for some surveys. They never did any work upon the road, or laid any track. All work of any kind has been discontinued for a number of years. ,

There has been no election of directors of the Clarion, Mahoning & Pittsburgh Railroad Co., since about 1883, and no meetings of ·the company, and no action taken, or work done under the charter since that time.

There is no evidence of any call made for payment of the unpaid stock subscriptions. The Clarion, Mahoning & Pittsburgh Railroad Co. never made any calls, and no certificates of stock were ever procured or issued by said company. . . . .

The following is a list of the subscribers to the capital stock of the Conewango & Clarion Railroad Co., so far as they appear from the evidence, who have not paid their subscriptions, with the amount of unpaid subscriptions of each, to wit:

| S. S. Jackson, | . | . | . | 100 shares | $ 5,000 |
| R. C. Winslow, | . | . | . 150 | " | 7,500 |
| Thomas K. Litch, | . | . | 300 | " | 15,000 |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

On the sixth day of November, 1884, Almon B. Hamilton recovered a judgment of $546.90 against the Clarion, Mahoning & Pittsburgh Railroad Co., in the Court of Common Pleas of Warren county, at No. 44 December Term 1884, with interest from November 6, 1884, and $9.80 costs. Upon this judgment a fieri facias was issued to No. 97 December Term 1884, to which the sheriff made return, " no property found on which to make the money or any part thereof."

On the same date, George C. Hamilton recovered a judgment of $4,025.90 against the same defendant, in the same court, at No. 45 December Term 1884, with interest from November 6, 1884, and $9.80 costs. Upon this judgment a fieri

Master's Report.

facias was issued to No. 98 December Term 1884, upon which the sheriff made the same return, "No property found on which to make the money or any part thereof."

On the twentieth of June, 1884, W. A. Irwin recovered a judgment of $264.42 against the same defendant, in the same court, to No. 111 March Term 1884, with interest from that date, and $1.30 costs; upon which was credited, December 21, 1885, $42.62. . . . .

I think from these returns of the sheriff I am justified in finding the Clarion, Mahoning & Pittsburgh Railroad Co. insolvent. These returns are not contradicted in any way. There is no evidence of any property but these unpaid subscriptions to the capital stock, and its corporate franchises. These cannot be presumed to be of much value, under the circumstances of the defendant corporation.

Thomas K. Litch, who died before the bringing of this suit was, at the time of his death, domiciled and resident at the borough of Brookville, in the county of Jefferson. Letters of administration upon his estate were granted by the register of Jefferson county to E A. Litch, whose residence and domicile were and are at said borough of Brookville, in said county of Jefferson.

The residence and domicile of S. S. Jackson were in the said borough of Brookville at the time of the bringing of this suit, and the residence and domicile of R. C. Winslow at the same time were at Punxsutawney, in said county of Jefferson.

CONCLUSIONS OF LAW.

As applicable to the foregoing facts I adopt the following conclusions of law:

1. The remedy of the plaintiffs, as judgment creditors of the Clarion, Mahoning & Pittsburgh Railroad Co., against the defendants, as subscribers to the capital stock of the Conewango & Clarion Railroad Co., to recover upon their unpaid subscriptions, is by bill in equity and is well selected.

2. The plaintiffs, as judgment creditors of the Clarion, Mahoning & Pittsburgh Railroad Co., have not a full, complete and adequate remedy at law, to recover their claims from the defendants, or either of them, as subscribers to the capital stock of the Conewango & Clarion Railroad Co., upon their unpaid subscriptions for said stock.

Master's Report.

3. It is not a good defence to the defendants, in this action, that the Conewango & Clarion Railroad Co., and Mahoning & Susquehanna Railroad Co., were merged and consolidated into a new company, as the Clarion, Mahoning & Pittsburgh Railroad Company. The regularity of such merger and consolidation cannot be questioned collaterally in this proceeding.

4. The Clarion, Mahoning & Pittsburgh Railroad Co., being a de facto if not a de jure corporation, the defendants who have dealt with it in its corporate capacity, cannot, in this proceeding, question the legality of the corporation.

5. As against these creditors of the Clarion, Mahoning & Pittsburgh Railroad Co., the defendants cannot defend on the ground that all the stock of the corporation has not been subscribed for.

6. The agreement in the articles of consolidation of the Conewango & Clarion Railroad Co., and Mahoning & Susquehanna Railroad Co., that all their stock actually subscribed for shall be canceled, is not sufficient to relieve the defendants from liability to the creditors of the Clarion, Mahoning & Pittsburgh Railroad Co., upon their unpaid subscriptions to the Conewango & Clarion Railroad Company.

7. The unperformed and abandoned contract of the Mahoning Improvement Co. with the Clarion, Mahoning & Pittsburgh Railroad Co., is not sufficient to transfer the interest of the latter company in the unpaid subscriptions to the capital stock of the company merged in it, beyond the reach of the creditors of the Clarion, Mahoning & Pittsburgh Railroad Company.

8. A call for payment of the unpaid subscriptions to the capital stock of the Conewango & Clarion Railroad Co., previous to the bringing of the suit, is not necessary in order to sustain this action.

9. The administrator of Thomas K. Litch, deceased, may be joined in this form of proceeding with the other subscribers of the capital stock of the Conewango & Clarion Railroad Co., to recover for unpaid subscriptions to said capital stock.

10. This suit may be maintained in Warren county against E. A. Litch, administrator of the estate of Thomas K. Litch, deceased, joined with other defendants, for their unpaid subscriptions to the capital stock of the Conewango & Clarion

Master's Report.

Railroad Co., notwithstanding the residence and domicile of said Thomas K. Litch in Jefferson county, at the time of his death, and the granting of letters of administration upon his estate by the register of Jefferson county.

11. Geo. C. Hamilton, W. A. Irwin and Almon B. Hamilton have a right to recover in this suit against S. S. Jackson, R. C. Winslow, Thomas K. Litch, W. H. Copeland, Benj. F. Neiswender, Wm. Paulding, C. Powell Karr, Corydon Karr and Theo. E. Smith.

12. The plaintiffs cannot recover against R. Brown, H. E. Brown, F. H. Rockwell, H. J. Miller and C. W. Stone, the master having found that they have paid their subscriptions to the capital stock. . . . .

OPINION.

It is contended by the defendants, that the plaintiffs have no right to maintain this form of action, and that the plaintiffs have a full, complete and adequate remedy at law, if the defendants are liable at all. I think it unnecessary to discuss this proposition at length. Lane's App., 105 Pa. 49, would seem to fully settle these questions. To this may be added the following cases: Bell's App., 115 Pa. 88; Cornell's App., 114 Pa. 153.

It was very strenuously urged on behalf of the defence, that the merger and consolidation of the Conewango & Clarion Railroad Co., and the Mahoning & Susquehanna Railroad Co., into a new company, or into a company with a new name, is illegal. I agree with the learned counsel for some of the defendants, Mr. Corbett, that, under the law, the merger should be of one existing railroad company into another existing railroad company. But I do not agree with him that, because two railroad companies have merged into a new company, or into a company with a new name, such merger is so illegal as to constitute a valid defence in favor of the subscribers to the capital stock of one of the companies, in a suit by judgment creditors of the new corporation. The law carefully gives a remedy to the stockholders, if they are dissatisfied with or object to the consolidation. Section 3, act of May 16, 1861, P. L. 703, entitled "An Act relating to railroad companies," provides for the disposition of the stock of dissatisfied stockholders, in cases of consolidated companies. Section 2 of the same act provides for .

notice to the stockholders, of the intended consolidation and method of voting thereon. The forms of law have been gone through with, and the agreement of consolidation of the two companies has been filed in the proper office at Harrisburg. No objection to this consolidation was raised by any one of these defendants so far as we are advised by the evidence. After all this, it will be presumed that the law was complied with so far as notice to them of the intended consolidation was concerned, and that they were satisfied with the merger. But, more than that; in this case several of the defendants have dealt with the new corporation in various ways. In so far, they have invited others to deal with the consolidated corporation, and I think are held out to the world to give it credit.

The corporation defendant is a corporation de facto if not de jure: Morawetz on Corp., §§ 133, 145. In the latter section it is said: "The rules referred to in the preceding sections are applicable, in an action brought by a creditor of an insolvent corporation to enforce the liability of its stockholders to pay the amount of their stock subscriptions. In a case of this character, the defendants cannot impeach the binding force of their contracts of membership, by showing that the formation of the corportion was unauthorized by law; nor can they establish the invalidity of the obligation assumed by the company in favor of complainant, upon the ground that the company had no authority to act in a corporate capacity." And see McHose v. Wheeler, 45 Pa. 32.

It is urged on behalf of some of the defendants, as a ground of defence, that all the stock of the Conewango & Clarion Railroad Co. was not subscribed for. I think this would be a complete defence in an action by the corporation to recover unpaid subscriptions to its capital stock. But it does not follow that a defence, good between the subscriber to its capital stock and the corporation, is good in a suit between such subscriber and a creditor of the corporation. After having permitted unquestioned the consolidation of the companies, and the consolidated company to make contracts and incur liabilities, I do not see how this defence can be interposed.

In Morawetz on Corp., § 285, it is said: "A stockholder may waive the performance of a condition precedent to his liability to contribute his proportionate share of the capital of the com-

pany; and after such waiver he will be liable as if the condition had been performed. Yet, if a subscriber, knowing that the requisite subscriptions had not been obtained, should attend meetings of the corporation and co-operate in votes for expending money and for making contracts, or take part in any other acts which could be properly done only upon the assumption that the capital of the company had been fully subscribed, he would not be permitted to refuse to contribute his proportion of capital, upon the ground that the amount required by the charter had not been subscribed." In § 134 of the same work it is said: "For similar reasons, it has been held that a stockholder might be estopped by his conduct from setting up as a defence to an action for calls, that the number of shares required by law to authorize the corporation to be formed have not been subscribed." It is urged, in opposition to this view, that those dealing with the corporation are bound to know that all the stock has not been subscribed to. There is some force in this view; yet I think that those persons who originate a corporation should see that it does not act, until the implied condition on which they subscribed has been complied with; and that when it does act, persons dealing with it have a right to assume that the precedent conditions have been complied with.

Neither do I think that the stipulation in the agreement of merger, that, "all the stock of the two first mentioned companies actually subscribed for shall be canceled," constitutes a good defence. This stipulation is followed by the provision, "that the Clarion, Mahoning & Pittsburgh Railroad Co. shall and will issue to the several holders and owners of, or subscribers to the stock of the Mahoning & Susquehanna Railroad Co., and the stock of the Conewango & Clarion Railroad Co., and the several owners and holders of or subscribers to the stock of the two last named companies shall be entitled to receive for every share thereof, one share of the capital stock of the Clarion, Mahoning & Pittsburgh Railroad Co." The plain intent and effect of this agreement is to substitute the stock of the consolidated company for the stock of the companies which have become merged in it. It is the stock that is canceled and not the subscriptions for stock. Any other construction would have been to denude the consolidated company of all advantages from the subscriptions to the capital stock of the two companies merged in it.

The construction I have given this agreement is in harmony with the provision contained in the third section of the act of May 16, 1861, P. L. 703, that, "All the property, real, personal and mixed, and debts due and rights of action, shall be deemed and taken to be transferred to and vested in the company into which such merger may have been made, without further act or deed; and all property, all rights of way, and all other interests, shall be as effectually the property of such company or corporation into which such merger may have been made, as they were of either of the former corporations, parties to said agreement." And see Lane's App., supra, 62.

I do not see how the contract with the Mahoning Improvement Co. can be made to avail the defendants. There is no pretence of a performance of its contract by this company, and it is in no shape to enforce its agreement against the defendant company. Indeed, to do so would be a fraud on the bona-fide creditors of the latter company. But, aside from this consideration, it is by no means clear that the agreement to transfer to the Mahoning Improvement Co. $6,000,000 of the full-paid capital stock of the defendant company, would have operated to convey this unpaid subscription owing by the defendants.

It is further objected against the right of the plaintiffs to recover in this suit, that no call has been made for payment of the unpaid subscriptions to the capital stock of the Conewango & Clarion Railroad Co. If the defendant corporation were solvent, a call would be necessary before it could maintain a suit against these subscribers. But it is insolvent, and these creditors have exhausted every remedy at law against it in vain. It is not possible for the corporation, or these defendants, to defeat their right of action, through either neglecting or refusing to make a call upon the unpaid subscriptions for means to pay them. If the corporation is unable or unwilling to act, the court in the proper proceedings will make the necessary call: Lane's App., supra, 63; Bell's App., supra, 92.

It is urged on behalf of the administrator of the estate of Thomas K. Litch, deceased, that he cannot rightfully be joined with the other defendants in these proceedings. This question is one involving difficulty in the mind of the master. In the case of Lane's App., supra, Sibilla Greene, administratrix of Enoch W. C. Greene, deceased, and Edwin H. Fitler, executor

of the last will and testament of William B. Elliott, deceased,
were joined with the other stockholders of the Philadelphia &
Susquehanna Blue Stone Co., as defendants.   No question
seems to have been raised as to the regularity of such joinder,
and of course that case is not decisive on that point.   The na-
ture of the relief sought, the relation of the deceased and living
parties with each other, and with the defendant corporation,
make the case one peculiarly for a court of equity to determine.
No full and just determination of the case can be made without
considering the rights of Thomas K. Litch, deceased.   A pro-
ceeding against his administrator in the Orphans' Court would
deprive his estate of the advantage and relief obtainable in a
court of equity.   The powers of the Orphans' Court are not
adequate to deal with all the questions that might arise; espe-
cially, to equalize liability and enforce contribution among the
subscribers to the capital stock.   And there is no good reason
why these should be compelled to have the question between
them determined in two separate courts, when one court is fully
competent to administer entire justice to all the parties.   It
may be necessary ultimately to go into the Orphans' Court, to
enforce the liability ascertained in this proceeding against the
estate of Thomas K. Litch, deceased.   But until that time, I
think this court has jurisdiction to determine the question in-
volved in this case, against the estate of said Litch as well as
the other defendants.

It is further objected on behalf of E. A. Litch, administrator
of Thomas K. Litch, deceased, that action can be maintained
against him only in the county where letters of administration
were granted, and where was the domicile of the decedent.
No authorities directly in point were cited for this position.
Reliance was had upon the case relating to suits against muni-
cipal corporations, in counties outside of where such municipal
corporations were situated.   But the analogy between the prin-
ciple involved in those cases and this is not close.   The fact
that this question has not arisen in our courts, after so long a
period of time as our intestate laws have been in force, is strong
evidence against the correctness of the position.   For this, and
the reasons advanced in the preceding paragraph, I am con-
strained to rule against Mr. Litch on this question of jurisdic-
tion. . . . .

Exceptions and Decree.

The findings of facts and the rulings of law, if correct, require the, dismissal of the bill as to Edward Gibbs, one of the plaintiffs, and R. Brown, H. E. Brown, F. H. Rockwell, H. J. Miller and C. W. Stone, of the defendants.

In recommending the entry of a decree against the other defendants, the master does not find what seems to him a clear guide as to the entire decree, in our cases. It seems clear that it must embrace the entire unpaid subscriptions of the defendants. It does not seem clear whether it is to embrace a pro rata call upon each, in proportion to the amount found to be owing. The entire unpaid subscription of each subscriber is liable for the payment of a creditor. There does not seem to be much good reason why the creditors should concern themselves about the adjustment of the payments among the debtors. The latter have taken no action to bring about the payment of the creditors. Such payment comes, if at all, after the end of the litigation. Besides, some of the defendants are non-residents of the state, and it may or may not be that some of them are insolvent. It seems to me that the creditors should be allowed to collect from those defendants most available, as they might do in a common-law judgment against several defendants. The defendants can then compel contribution, and work out the equities of the case between themselves.

And that, I would think, may be done hereafter in this proceeding. As this court has obtained jurisdiction of the subject matter, it may retain it to work out all the equities of all the parties concerned, which have a direct relation to the litigation. But it seems to me that the creditors should not be delayed or hampered by this judgment, and a decree will be submitted in accordance with these views.

To the foregoing report of the master, E. A. Litch, administrator of Thomas K. Litch, deceased, R. C. Winslow and S. S. Jackson filed exceptions alleging that the master erred, inter alia :

4. In not finding that there was no legal or sufficient evidence that the alleged Mahoning & Susquehanna Railroad Co. ever existed as a corporation.[1]

9. In not finding that T. K. Litch, R. C. Winslow and S. S.

Exceptions and Decree.

Jackson never did become stockholders of the Conewango & Clarion Railroad Co.; that there was no evidence that any stock certificates were ever issued by it, or tendered to them; or that such company ever so far organized that they could have complied with their agreement to take shares of stock therein.[4]

11. In not finding that there was no legal or sufficient evidence that the alleged Conewango & Clarion Railroad Co. was a corporation.[2]

14. In not finding that it was incumbent on the plaintiffs, the same having been put in issue by the pleadings, to establish the existence of the corporation by them styled the Clarion, Mahoning & Pittsburgh Railroad Co., and that its existence was legal, which plaintiffs did not do; but, on the contrary, the evidence adduced by them showed that such company had no corporate existence by any warrant or authority of law.[3]

20. In regarding the evidence adduced by the plaintiffs for the purpose, as sufficient to justify a finding that the Clarion, Mahoning & Pittsburgh Railroad Co. was insolvent when this suit was brought.[7]

28. In not holding, that the plaintiffs have no right to recover their claims, or any part thereof, from any defendant as a subscriber to the articles of association of the Conewango & Clarion Railroad Co., on his agreement to take shares of stock therein.[5]

E. A. Litch, administrator, etc., in his own behalf filed an exception alleging that the master erred:

40. In his tenth conclusion of law, which is as follows: "This suit may be maintained in Warren county against E. A. Litch, administrator of the estate of Thomas K. Litch, deceased, joined with other defendants, for their unpaid subscriptions to the capital stock of the Conewango & Clarion Railroad Co., notwithstanding the residence and domicile of said Thomas K. Litch in Jefferson county, at the time of his death, and the granting of letters of administration upon his estate by the register of Jefferson county."[11]

—The said exceptions having been overruled by the master and argued on renewal thereof before the court, a formal decree was entered on April 7, 1890, dismissing said exceptions and adjudging, inter alia:

Exceptions and Decree.

That the defendants, hereinafter named, were severally liable to pay the creditors of the Clarion, Mahoning & Pittsburgh Railroad Co., the corporation defendant, in the following sums unpaid upon their subscriptions, respectively, to the capital stock of said company, to wit:

S. S. Jackson,    .    .    .    .    .    .    $4,500
R. C. Winslow, ·    .    .    .    .    .    .    6,750
Estate of Thos. K. Litch, E. A. Litch, admr.,    13,500

\*    \*    \*    \*    \*    \*    \*    \*

The decree ascertained, further, the sums due to the plaintiffs in the bill, and directed that the defendant stockholders named therein pay the said sums out of their unpaid subscriptions and not exceeding the amount thereof, respectively, and " that if any of the said defendants pay under this decree more than his just proportion of the sums hereby decreed to be paid, he shall be entitled to contribution from his co-defendants in proportion to the amounts herein decreed to be owing to each," awarding execution forthwith in favor of the plaintiffs.[10]

Thereupon, the said defendants, S. S. Jackson, R. C. Winslow, and E. A. Litch, administrator of the estate of Thomas K. Litch, deceased, took these appeals, specifying that the court erred:

1–5. In not sustaining the appellants' exceptions.[1 to 5]

6. In not finding that the contract of the defendant company with the Mahoning Improvement Co. was an appropriation by the defendant company of all its stock, effected a release of all the subscribers for the stock of the two prior railroad companies, and divested any right in any such subscriptions which may have been in the defendant company.

7. In not sustaining appellants' exception.[7]

8. In sustaining the action without a previous demand upon the alleged corporation to call in and collect its unpaid subscriptions.

9. In making a decree without first having taken an account of and ascertained the amount of debts due by the alleged corporation, the amount of assets and of unpaid capital stock, the exhaustion of all assets other than the unpaid stock, and the amount of unpaid stock required for the discharge of said debts.

10. In the final decree made April 7, 1890.[10]

Arguments.

11. In not sustaining appellants' exception.[11]

12. In not dismissing the bill as to appellants.

*Mr. George A . Jenks* (with him *Mr. Charles Corbet*), for the appellants:

1. The Clarion, Mahoning & Pittsburgh Railroad Co. had no existence. (1) There never existed such a corporation as the Mahoning & Susquehanna Railroad Company. It is alleged to have been created by act of April 19, 1854, P. L. (1855) 687, and the supplements thereto. The last of the supplements, act of April 5, 1873, P. L. 537, extended the time of completion four years. But it does not appear that a patent was ever issued, nor was there evidence that there ever was an organization under the acts before December 6, 1881; and the sole evidence of organization at that date is contained in the articles of consolidation dated that day, and the certificate of approval by a vote of 510 shares of stock on December 20, 1881. No part of the road was ever built or completed, nor was a single step ever taken towards it. The time to build and complete having expired, the special acts ceased to have any validity; and they are void for the additional reason that all such special acts were annulled by § 1, article XVI. of the constitution. After the expiration of the time fixed by law, the defence of non-completion can be set up as a valid defence, in a collateral action for the recovery of stock subscriptions: Mc-Cully v. Railroad Co., 32 Pa. 31, 32; nor can the right of eminent domain be exercised after the expiration of the time: Plymouth R. Co. v. Colwell, 39 Pa. 340, 341; Commonwealth v. Lykens Water Co., 110 Pa. 291.

2. (2) Letters patent are necessary to give corporate life, under § 2, act of February 19, 1849, P. L. 79; so, under § 3, act of June 8, 1874, P. L. 277, a supplement to the act of April 4, 1868, P. L. 62; and the governor has imposed upon him the duty to see that the law is complied with: Mitcheson v. Harlan, 3 Phila. 385. As in the case of the Mahoning & Susquehanna Railroad Co., no letters patent were ever issued to the Conewango & Clarion Railroad Co., and such a corporation as the latter never had a legal existence. (3) Wherefore, the alleged consolidation of the two non-existent companies was void, and the Clarion, Mahoning & Pittsburgh Railroad Co., the result

of it, was a nullity. The power of consolidation, granted by § 1, act of May 16, 1861, P. L. 702, is by the terms of the grant limited to "chartered" companies. No power is granted to consolidate an unchartered corporation with a chartered one; still less, to consolidate a chartered corporation with an absolute nonentity, or to consolidate two such fictions. "That there never was such a person or corporation as the plaintiff, goes to the right of action and is pleadable in bar: " Northumb. Co. Bank v. Eyer, 60 Pa. 436; Rheem v. Wheel Co., 33 Pa. 358; Scovill v. Thayer, 105 U. S. 143.

3. The appellants never subscribed for stock in the Clarion, Mahoning & Pittsburgh Railroad Co. If liable at all the liability is claimed to have arisen from their subscription to the stock of the Conewango & Clarion company. That company never opened any subscription books and never issued any stock. The only subscription alleged to have been made was contained in the original articles of association of that company. A corporation cannot sustain an action against one who, before it was chartered, signed a paper with others agreeing to take a certain quantity of its stock and afterwards refused to do so: Strasburg R. Co. v. Echternacht, 21 Pa. 220; Cook on Stock, etc., § 186. And a subscriber, even after incorporation, cannot be held on his subscription, unless the whole capital stock is subscribed for: Cook on Stock, etc., § 176; Rockland R. Co. v. Sewall, 12 Am. & Eng. Corp. Cas. 85. A subscriber for stock, if liable at all, is liable only on his contract. Those who agreed to take stock by joining in the articles of association, made that agreement dependent upon the condition precedent that, in case a corporation was organized competent to enjoy life and issue stock, they would take stock to the amount stated. They cannot be compelled to accept that which is void or voidable, for that which was to be legal and valid.

4. The general rule is, that as the consolidation is " a radical change in the organization;" it therefore takes "away the motive which induced the subscription, as well as affects injuriously the consideration of the contract: " Nugent v. Supervisors, 19 Wall. 241. " It is plain enough that a dissenting member cannot thus be forced into a new corporation, and that his property in one corporation cannot be taken from him, and

the stock of another imposed upon him by way of compensation, by the act either of the legislature or of his co-corporators, or of both combined. . . . . . The act of transfer and dissolution is one. If carried into effect, it destroys the stock:" Lauman v. Railroad Co., 30 Pa. 48, 49. See also, Cook on Stock, etc., § 671; Phila. etc. R. Co. v. Railroad Co., 53 Pa. 20, 62. While the articles of consolidation provided that the subscribers to each of the companies were entitled to receive stock on the subscriptions that were canceled, yet, unless the subscribers elected to receive, or did receive it, they were not bound by the subscription. These defendants neither elected to receive, nor did receive any stock in the consolidation.

5. The subscription to the stock, if obligatory, was for the purpose of building the road. The company, if the corporation existed either de jure or de facto, could lawfully appropriate the same for that purpose. The sale and setting aside of all the stock, by the contract of December 21, 1881, between the defendant company and the Mahoning Improvement Co., was for that purpose, and the covenant of the improvement company was a full and valuable consideration for the transfer. There is no question as to the bona fides of that contract. And there is no evidence that any of the present alleged debts then existed; the evidence shows they did not. The articles of consolidation canceled the subscription, and left all the stock in the ownership and possession of the consolidated company. The option of the stockholders, unaccepted by them, did not vest any stock in them, nor entitle them to any unless accepted; and before any stock was accepted, the consolidated company disposed of all of it to the improvement company. By virtue of that transfer, the liability for stock of the Conewango & Clarion Railroad Co., if any existed, enured to the benefit of the improvement company, in preference to the creditors of the consolidated company, whose debts were afterward contracted.

6. And there was error in the final decree made. Stock, in cases of insolvency, is due as an entirety. It is due to the aggregate of the creditors; and only so much is due as is requisite to discharge the indebtedness of the corporation, after all other assets have been thereto applied. As a necessary consequence, there must be an account of debts, assets, and unpaid

Arguments.

· capital taken.   When such an account has been taken, and the amount required from each stockholder has been ascertained, an assessment ordering the payment of such proportionate amount by each may be made.   This is the doctrine of Lane's App., 105 Pa. 67, which declares further: "Except in cases where the corporate authorities have themselves made calls which are authorized by the subscription contracts, there is absolutely no liability of any kind whatever on the part of the stockholder to pay any part of his unpaid capital, except under and by force of an assessment made as above stated."   The only exception to this mode of procedure is where the whole of the unpaid stock is necessary to pay the creditors.   The general principle is recognized and the exception declared in Citizens etc. Bank v. Gillespie, 115 Pa. 564; Cornell's App., 114 Pa. 153.

7. An action ought not to have been maintained in Warren county against E. A. Litch, administrator, joined with others. Under the statutes, an administrator may become and be made party to and prosecute and defend any action or legal proceeding pending in any court of the commonwealth, to which the decedent at the time of his death was a party.   He may sue and be sued in all kinds of actions, slander, libels and for wrongs to the person excepted, which might have been maintained by or against the decedent; but no provision is found authorizing suit against him outside of the county where he derives his authority, and where he marshals the estate and the Orphans' Court distributes it.   An action may be transitory, yet the forum local: Lehigh Co. v. Kleckner, 5 W. & S. 186; founded in the convenience and policy of the state: Oil City v. McAboy, 74 Pa. 251; Everman's App., 67 Pa. 335 ; Means's App., 85 Pa. 78.   Moreover, suit may not be brought jointly against an administrator and a party surviving; for one is to be charged de bonis testatoris, and the other de bonis propriis : Tr. & H. Pr., §1667; Hoskinson v. Eliot, 62 Pa. 393.   What execution would issue on a judgment against a survivor and the representative of the deceased ?

*Mr. S. T. Neill* and *Mr. George M. Frazine* ( with them *Mr. James W. Wiggins* ), for the appellees :

1. It is not denied that the corporate existence of the Mahon-

ing & Susquehanna Railroad Co. was extended by act of assembly to April 3, 1881. The general act of May 15, 1874, P. L. 188, gave an additional lease of life of one year to all such corporations. Its charter, therefore, had not expired on December 6, 1881, when it entered into the agreement of consolidation and merger. The Conewango & Clarion Railroad Co. was organized under the act of April 4, 1868, P. L. 62. Under § 3 of that act, the plaintiffs put in evidence a copy of the articles of association duly certified as required by law. By this documentary evidence all the requirements of the law were fully observed. Under § 3, act of May 16, 1861, P. L. 702, and § 1, act of April 10, 1869, P. L. 24, the record from the office of the secretary of the commonwealth of the agreement of consolidation and merger is sufficient proof thereof : Commonwealth v. Railway Co., 53 Pa. 9 ; and that the new corporation assumed a new name from those of the corporations composing it, is no valid reason for saying that it is a nullity : Scotland Co. v. Thomas, 94 U. S. 682.

2. It is clear from the provisions of the consolidation act of May 16, 1861, P. L. 702, and the various supplements thereto, that the liabilities of the constituent companies, as well as their assets, passed to the new company. One important asset of the Conewango & Clarion Railroad Co. was the subscriptions by the defendants to its stock. Both by virtue of the agreement of consolidation and by force of the statutes, that subscription became an asset of the defendant corporation. Simultaneously with the extinguishment of the liability of these subscribers to the old company, came the assumption of a new liability to the corporation defendant. It was but the substitution of a new for on old obligation. But the old obligation was not extinguished until the substitution was complete. The issuance and acceptance of certificates of stock do not affect the liability of the subscriber upon his agreement to pay ; and the cancellation of the old stock certificates did not cancel the subscriptions. That this is true appears by the joint agreement, and the act of 1861 : See Scotland Co. v. Thomas, 94 U. S. 682 ; Henry Co. v. Nicolay, 95 U. S. 619 ; Schuyler Co. v. Thomas, 98 U. S. 169 ; Greene Co. v. Conners, 109 U. S. 104.

3. Moreover, the decree pro confesso entered against the corporation defendant is conclusive upon the stockholders defen-

dant, as to the regularity of the organization of said corporation as averred in the bill. By that decree, all the averments of the bill were admitted, and the effect of it was conclusive on the defendants as stockholders who were made parties defendant with the corporation, and cannot now be questioned: Hawkins v. Glenn, 131 U. S. 319; Thomson v. Wooster, 114 U. S. 104; Williams v. Corwin, 1 Hop. Ch. 471. Nor did the contract between the defendant company and the Mahoning Improvement Co. relieve these defendants. Stockholders of record are liable for unpaid subscriptions, although they may have parted with their stock: Hawkins v. Glenn, 131 U. S. 319. But that the agreement did not amount to a transfer of the stock is apparent. There were such conditions precedent to a vesting of title to the stock in the improvement company, that, under the facts as found by the master, no title passed or could pass.

4. The defendant corporation was insolvent when the suit was brought. The returns to the writs of fieri facias, and the decree pro confesso determined this question. And there was a determination of the amount of debts owed by the defendant corporation and who the creditors were, and for anything that appeared before the master that was all the indebtedness. Besides, upon payment by these defendants, the court can still retain the bill, to work out the equities of contribution among the several stockholders. There is conclusive authority for just such a decree in Stang's App., 10 W. N. 409; Cornell's App., 114 Pa. 153; Hatch v. Dana, 101 U. S. 205. As to a precedent call by the company, a court of equity will make all the call that is necessary, and do all that the officers of the corporation should do: Hawkins v. Glenn, 131 U. S. 319; Yeager v. Scranton S. Bank, 14 W. N. 296. As to E. A. Litch, administrator, all the proceedings against him were based upon a service of the bill under § 1, act of April 6, 1859, P. L. 387. In any event, it is clear the court below had "equity jurisdiction:" Coleman's App., 75 Pa. 459. And there is a distinction between the ascertainment of a liability, and the enforcement of it.

OPINION, Mr. CHIEF JUSTICE PAXSON:

The opinion of the learned master covers this case so fully that an elaborate discussion of it is unnecessary. The main

pinion of the Court.

contention on the part of the appellants was that the Mahoning & Susquehanna Railroad Co., the Conewango & Clarion Railroad Co., and the Clarion, Mahoning & Pittsburgh Railroad Co., never had a legal corporate existence; that the said appellants, T. K. Litch, R. C. Winslow, and S. L. Jackson never became stockholders in the last-named company, and that said company was never so far organized that they could have complied with their respective agreements to take shares of stock therein. See first, second, third and fourth assignments of error.

It would be tedious to detail all the proceedings in relation to the organization of these companies, and the merger of the first two companies into a consolidated corporation under the name of the Clarion, Mahoning & Pittsburgh Railroad Company. All this has been carefully done by the learned master. It is enough to say that the merger sufficiently appeared by the certificate of the secretary of the commonwealth; and the effect of it was, under the third section of the act of May 16, 1861, P. L. 702, to vest in the consolidated company all the property, rights and franchises of said companies, subject to all rights of their respective creditors. The consolidated company is estopped by the decree pro confesso from alleging that it is not a corporation de jure, and liable as charged in the bill to the plaintiffs, who are the appellees here, and who have recovered judgments against it in actions at law. It is idle, as against creditors, to set up the defence that the corporation had no legal existence. It had sufficient existence to contract debts, and, in the interests of its creditors, it must at least be treated as a de-facto corporation. And if there is anything settled in the law, it is that the existence of a corporation de facto cannot be inquired into collaterally: Cochran v. Arnold, 58 Pa. 399. Much less can such a corporation, or a stockholder therein, set up a defect in its charter as against a creditor who has contracted with it upon the faith of its charter. We are not considering the case of a subscriber to shares who refuses to pay his subscription on the ground that the organization has not been perfected, and the cases cited upon this point have no application.

We are clearly of opinion that, by force of the articles of consolidation and the act of assembly, the subscription to the

Opinion of the Court.

stock of the Conewango & Clarion Railroad Co. enured to the benefit of the consolidated company, and became an asset in its hands for the payment of debts; and that the subscribers thereof are liable to the creditors of the latter, to the amount of their unpaid subscriptions. This bill was filed to enforce this personal liability against certain of the stockholders. The corporation itself is admittedly insolvent. It does not appear to have any available assets. While it is well settled that a single creditor may not sue a particular stockholder at law, and thus secure an advantage over other stockholders; see Lane's App., 105 Pa. 49; yet this bill was filed by or on behalf of all the creditors against the corporation and its stockholders, precisely as was done in Lane's App., supra. The rights of all parties, therefore, can be adjusted in the one proceeding, and the decree of the court below is so framed as to compel contribution in case any one defendant is required to pay more than his just proportion.

A point was made that this suit cannot be maintained against E. A. Litch in Warren county, for the reason that he is sued as administrator of Thomas K. Litch, deceased, the domicile of said administrator being in Jefferson county, in which county the letters of administration were taken out. See eleventh assignment. This objection is based upon the ground that the Orphans' Court of Jefferson has the exclusive jurisdiction over the estate of said decedent. It may be conceded that the estate of Thomas K. Litch cannot be distributed by the Common Pleas of Warren, but no such question arises here. It is not a question of distribution, but of the fixing of a liability or of a right. When that is ascertained, it will be for the Orphans' Court of Jefferson to decide to what extent it can be enforced against the estate. That will depend upon the amount of the estate and the rights of other creditors. Aside from this, it must not be overlooked that it was a bill in equity, and that the court acquired jurisdiction over E. A. Litch, administrator, because said court had "acquired jurisdiction of the subject matter in controversy, by the service of its process on one or more of the principal defendants:" Act of April 6, 1859, P. L. 387. No question appears to have been raised as to the regularity of the proceeding under this act. It was urged that the administrator should not have been joined with living par-

ties, and we are asked, what execution would issue on a judgment against a survivor and the representative of a deceased party ? If this were a judgment at law there would have been more force in this suggestion ; but a court of equity can always mould its decrees to meet the difficulties of the case, and do no injustice to any one.

> The decree is affirmed and the appeal dismissed at the costs of the appellants.