## PENNSYLVANIA WATER & POWER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6678.

#### Circuit Court of Appeals, Third Circuit.

#### Aug. 23, 1938.

John E. Malone, of Lancaster, Pa., and Edwin M. Sturtevant and Clyde T. Warren, both of Baltimore, Md., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Lucius A. Buck, Sp. Assts. to Atty. Gen., for respondent.

Before DAVIS and BIGGS, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

The sole question here at issue is whether or not a parent corporation, having taken over the assets of its subsidiary corporation under the provisions of the so-called "short form merger statute" of Pennsylvania (Purdon's Pennsylvania Statutes, Title 15, Section 595), and thereafter, in 1928, having redeemed for cash bonds issued by the subsidiary, is entitled to deduct from its income tax return for that year the amount of the unamortized discount and expenses connected with the issuance of the bonds.

In the case of Metropolitan Edison Company v. Commissioner, 3 Cir., 98 F.2d 807, which we are filing with this opinion, we held that the deduction was allowable.

The decision in that case is applicable to the facts in this case.

Prior to October 4, 1927, the petitioner was authorized by its charter (1) to store, transport and supply water, and (2) to produce and sell electricity generated by water power. It was informed, however, that it lacked the power to generate electricity by means of steam. At various times of the year, such as, when the river was blocked by ice or the water was low, the petitioner's hydroelectric plant was incapable of producing sufficient electricity for its needs.

In order to have on hand an added source of electrical power during those periods, it formed the Holtwood Company, hereinafter referred to as Holtwood, for the purpose of owning and operating a steam power plant. Holtwood and the petitioner thereupon entered into a contract under the terms of which the petitioner agreed to convey to Holtwood a tract of land adjacent petitioner's hydroelectric plant, and Holtwood agreed to erect thereon a steam power plant according to specifications acceptable to the petitioner. Holtwood also contracted to sell to the petitioner all of the electricity produced at such plant, in consideration of which the petitioner promised to pay as follows:

" * * * any and all sums necessary for the purpose of defraying the expenses of maintaining the corporate organization of the Steam Company; the expenses attending the issuing, registration and transfer of the capital stock and bonds of the Steam Company, now or hereafter issued and outstanding, and all interest on its bonded or other indebtedness at any time outstanding or existing, as and when said several interest payments may become due and payable; sinking fund requirements of its first mortgage or other bonds, in accordance with the provisions of the mortgage or deed of trust securing such bonds; all Federal, State, Municipal and other taxes, charges, licenses and assessments, now or hereafter lawfully imposed upon the Steam Company or for which it may in any manner be liable or chargeable on account of its corporate existence, its franchises, property, real or personal, business, earnings, bonds, capital stock, dividends or profits and any sum which shall hereafter be levied or assessed on any shareholder of the Steam Company or upon its share by way of direct tax upon said share or

the income thereof, which the Steam Company shall or may be required to pay on behalf of or retain from any such shareholder or bondholder; all fire, storm, lightning, accident, compensation, public liability or other insurance premiums which the Steam Company may be required or deem advisable to carry; all legal expenses and other expenses whatsoever from time to time as the same may arise not otherwise specifically covered by the terms of this agreement. The intent and purpose of these provisions being that · the Power Company shall at all times pay or provide for the payment of every obligation and expense of the Steam Company in order to enable the latter to realize a net return of eight per cent. annually upon the par value of all of its securities at any time outstanding."

Holtwood issued 15,000 shares of capital stock, 14,950 of which were purchased by the petitioner in its own name. The petitioner also acquired equitable title to the remaining 50 shares, but they were placed in the names of other persons to qualify them as directors. Holtwood also issued bonds to the amount of $2,750,000. The discount on these bonds amounted to $137,500 and the expenses connected with the issue totalled $25,249.87. With the proceeds of the sale of all of its stock and bonds, Holtwood erected the steam power plant as agreed.

This plant was operated only during those periods when the petitioner's hydroelectric plant could not produce sufficient electric power to supply its needs, and then it was operated by the petitioner, as Holtwood employed no men for this purpose. The officers and directors of the. petitioner were made the officers and directors of Holtwood and all of the compensation received by them came from the petitioner.

The provision in the petitioner's charter empowering it to store, transport and supply water, was held to be a bar to a merger between the two companies. On June 26, 1926, the Supreme Court of Pennsylvania in the case of York Haven Water & Power Co. v. Public Service Commission, 287 Pa. 241, 134 A. 419, under similar facts, held that if the power to supply water was legally abandoned, the merger could take place. In accordance with this decision, on October 4, 1927, the petitioner surrendered this· power and shortly thereafter in 1927 it took over all of the assets of Holtwood under the "short form merger

statute" of Pennsylvania. Under this statute, Holtwood conveyed all of its assets to the petitioner and the petitioner returned to Holtwood all of its stock and assumed all of its liabilities.

In 1928, the petitioner redeemed for cash all of the outstanding bonds issued by Holtwood. At that time there was $144,255.10 of the bond discount and issuing expenses still unamortized. In its income tax return for that year, the petitioner deducted that amount. The commissioner, however, disallowed this deduction and determined a deficiency of $16,575.82. The United States Board of Tax Appeals sustained the commissioner's determination and the petitioner appealed to this court.

The sole question at issue is whether or not the petitioner was entitled to the deduction. This question depends upon whether or not the method by which the petitioner took over the assets of Holtwood · amounted to a merger or to a sale. If the transaction was a merger, the deduction should have been allowed. If it was a sale, it should not have been allowed.

As stated above, the decision in Metropolitan Edison Company v. Commissioner, supra, controls this case and the order of redetermination is set aside and the case remanded to the Board with directions to, allow the deduction.