# York Haven W. & P. Co. et al., Appellants, v. Public Service Commission et al.

*Corporations — Public service companies — Water companies — Water power companies—Electric companies—Merger—Surrender of power to supply water—Public policy—Acts of April 9, 1856, P. L. 293; April 29, 1874, P. L. 73; April 17, 1876, P. L. 30; May 8, 1889, P. L. 136; July 2, 1895, P. L. 425; May 3, 1909, P. L. 408.*

1. The consolidation or merger of electric light, heat and power companies with hydro-electric or water power companies, is a matter of public policy, which should be accelerated by a liberal construction of the acts empowering merger or purchase.

2. Consolidation of corporations in Pennsylvania are accomplished by a short or a long form merger.

3. The first is under the Act of April 17, 1876, P. L. 30, as amended, which provides that a sale of franchises may take place if the "franchises are not inconsistent" with this act.

4. The second is under the Act of May 3, 1909, P. L. 408, which permits consolidation by corporations "transacting the same line of business."

5. Consolidation cannot take place between corporations chartered "for entirely different objects."

6. In determining whether a merger or sale may take place under the acts, the purpose for which the companies are formed will not control in their entirety.

7. Neither will the particular clause under the Act of April 29, 1874, P. L. 73, under which the incorporation takes place, control; nor will the fact that the objects or purposes of the consolidating companies could not be procured in one charter or by a single incorporation, though all of these must be considered in determining the intent of the legislature when it used the word "inconsistent."

8. In order to permit consolidation, the business transacted, as it relates to corporate objects having similar features, must be substantially the same, or similar.

9. A franchise inconsistent with the business to be done, is not fatal to consolidation, if such franchise is eliminated before the consolidation takes place.

10. In determining the right to consolidate and to effect the legislative purpose, the courts will not apply to the charter-power the rigid rule applicable to an exercise of the power in the conduct of its business.

242 Y. HAV. W. & P. CO., Aplnts., *v.* PUB. SERV. COM. et al.

Syllabus. [287 Pa.

11. The legislature may determine what activities shall constitute a business. It is perfectly proper for it to define the business of water and power dealing to include such cognate purposes as tend to the same end.

12. Such determination by the legislature of "business" does not offend the constitutional provision that "no corporation shall be engaged in any business other than that expressly authorized in its charter."

13. Such determination also accords with the fundamental thought of securing the greatest possible amount from natural resources, and at the same time conserving the coal supply of the State.

14. A water company incorporated under section 2, subdivision IX, of the Act of April 29, 1874, P. L. 73, with power enlarged under the Act of July 2, 1895, P. L. 425, to convert water power into electricity may sell its franchises and property to a company organized under the Act of 1874 as amended by the Act of May 8, 1889, P. L. 136, and engaged in supplying electricity to the public, provided that the vendor company, either in proceedings under the Act of April 9, 1856, P. L. 293, or otherwise surrenders its charter-power to supply water to the public.

15. Under such consolidation, the consolidated company cannot extend its operation, through steam construction out of proportion to the water power its electric current generated by steam facilities, into districts not covered by the consolidated charters.

16. The purchasing company cannot extend its rights through purchase; it can exercise only the rights of the company it buys to the extent permitted by law.

Argued May 26, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 224, Jan. T., 1926, by plaintiffs, from judgment of Superior Ct., Oct. T., 1925, No. 270, affirming order of Public Service Commission, refusing to approve of sale, Application Docket No. 11726, 1924, in case of York Haven Water & Power Co. and Metropolitan Edison Co. v. Public Service Commission and Harrisburg Light & Power Co., Intervenor. Reversed conditionally.

Appeal from Superior Court. See 87 Pa. Superior Ct. 213.

The opinion of the Supreme Court states the facts.

Action of Public Service Commission refusing to approve sale was affirmed by the Superior Court.    Plaintiff appealed.

*Error assigned* was, inter alia, judgment of Superior Court, quoting it.

*Ralph J. Baker,* of *Hause, Evans & Baker,* with him *Hedley V. Cooke,* for appellants.—The principal cases to be considered under the Acts of May 29, 1901, P. L. 349, and May 3, 1909, P. L. 408, are Motter v. Electric Co., 212 Pa. 613; Com. v. Gas Co., 26 Pa. C. C. R. 657; Hummelstown Water Co., 15 Pa. Dist. R. 532; Com. v. Light, Heat & Power Co., 23 Pa. Dist. R. 786.

In considering these acts, it will be noted that, on its face, the Act of 1901 does not contain any limitation on the corporations which may merge thereunder, while the Act of 1909 requires they shall be transacting the same or a similar line of business.   Both acts, however, permit merger of companies formed under different organization or incorporation statutes, including special acts.   There is no requirement that they shall be *formed* for the same purpose or to transact the same business, or have franchises all of which could have been obtained upon one original incorporation.

It will be noted that the Act of April 17, 1876, P. L. 30, contains no language to limit or restrict the parties which may effect the sale and purchase thereunder, except that the vendee shall be a corporation organized under or accepting the Act of 1874.   The vendor may be a corporation formed thereunder or under any special act or earlier or later general act.

The only words of limitation in the Act of 1876 are with reference to the franchises of the vendor to pass to the vendee.   The franchises "not inconsistent with this act" shall vest in the purchasing corporation.

244 Y. HAV. W. & P. CO., Aplnts., *v.* PUB. SERV. COM. et al.

Arguments. [287 Pa.

The Superior Court has given an interpretation to the quoted words which we deem erroneous.

When the legislature has plainly committed itself to the policy of permitting corporations to merge and consolidate, the rule of construction adopted should be a liberal one to effect that policy: Penna. Utilities Co. v. Pub. Ser. Com., 69 Pa. Superior Ct. 612.

The right of corporations to merge under the Acts of 1901 and 1909 does not depend upon the fact that they are *formed* for the same purpose or to transact the same business: Motter v. Electric Co., 212 Pa. 613; Com. v. Gas Co., 26 Pa. C. C. R. 657; Com. v. Light, Heat & Power Co., 23 Pa. Dist. R. 786; Howley v. R. R., 213 Pa. 36.

The legislature has not, in any manner, indicated an intention to keep these two companies in rigidly separate classes, or to set up a barrier between them to prevent a merger or consolidation. An intention to this end is not shown (1) by an alleged difference in necessity of obstructing streams or legislation on that subject; (2) by respective territorial limitations; (3) by difference in liability to certain taxes under other and wholly unrelated laws, or (4) by the failure to include water-power companies in the grouping of electric companies for the limited purpose of merger with street railways under the Act of 1919.

*Frank M. Hunter,* Special Counsel, with him *W. Y. Blanning,* and *John Fox Weiss,* for the Public Service Commission.—The Purchase Act cannot be employed to effect a merger between corporations formed for different corporate objects: Hey v. Water Co., 207 Pa. 38; in re Hummelstown Water Co., 32 Pa. C. C. R. 593.

*Spencer G. Nauman,* with him *C. H. Bergner,* for intervening appellee.—There is no specific authority to permit the sale: Hey v. Water Co., 207 Pa. 38.

The two companies were chartered for entirely different objects and cannot be consolidated: Com. v. Pa. Water & Power Co., 271 Pa. 456; Hummelstown Water Co., 15 Pa. Dist. R. 532, 32 Pa. C. C. R. 593.

There is no capacity in the Metropolitan Edison Co. to take and exercise the franchise of the York Haven Co.: Conoy Twp. Supervisors v. York Haven E. Power Plant Co., 222 Pa. 319, 323; Rider v. York Haven Water & Power Co., 242 Pa. 141; Same v. Same, 251 Pa. 18; Same v. Same, 255 Pa. 196.

The proposed sale would seriously affect territorial rights.

OPINION BY MR. JUSTICE KEPHART, June 26, 1926:

The question raised by this appeal is of considerable importance. It concerns the right of an electric light, heat and power company to purchase or merge with a hydro-electric or water power company. Both are public service concerns, owing duties to the public. The tendency of the day is to consolidate the former companies and construct if possible hydro plants as a supplemental energy. This result prevents great economic waste and makes possible more efficient service at reduced rates to the public. The part which the hydro plants play in this system is doubly important since it not only effects a saving to the consumer, but is an actual conservation of our mineral resources, a matter of the utmost importance to the Commonwealth. These considerations make the consolidation or merger of these plants a matter of public policy, which should be accelerated by a liberal construction of the acts empowering merger or purchase. It has been stated as a general proposition that there is no constitutional inhibition against merger, and the legislature, through the several acts hereinafter mentioned, is committed to the policy of merger and sale of corporate franchises: Pennsylvania Utilities Co. v. Public Service Commission, 69 Pa. Superior Ct. 612;

246 Y. HAV. W. & P. CO., Aplnts., *v.* PUB. SERV. COM. et al.

Opinion of the Court. [287 Pa.

Hey v. Springfield Water Co., 207 Pa. 38. This is subject to certain limitations.

There are two forms of consolidation in Pennsylvania, a short and a long form merger. These are accomplished by the Act of 1876, as amended, and the Act of 1909. The Act of 1876, P. L. 33, as amended, provides that such sale may take place if the "franchises are not inconsistent" with this act. And the merger Act of 1909, P. L. 408, permits consolidation between corporations "transacting the same or similar lines of business." In Hey v. Springfield Water Co., supra, in adopting the opinion of the lower court, we established as a definite barrier line where consolidation could not take place between corporations chartered *"for entirely different objects."* Unquestionably, where the objects were *entirely* the same, there could be no room for doubt that such consolidation could take place, but between the two extremes there are many corporations having objects and purposes not entirely different or not entirely the same. So that, in determining whether a merger or sale may take place under these acts, the purposes for which the companies are formed will not control in their entirety, though of course no corporation may act except through their purposes; neither will the particular clause of the Act of 1874, P. L. 73, under which the incorporation takes place, control; nor will the fact that the objects or purposes of the consolidating companies could not be procured in one charter by a single incorporation, though all of these must be considered in determining the intent of the legislature when it used the word "inconsistent." Take, as illustrative of the purpose for which companies may be formed, the case of Motter v. The Electric Co., 212 Pa. 613, where gas and electric companies were permitted to merge. The purposes are as different as were the commodities the companies dealt in. The manner of production and the service are not the same. The purposes called for in the respective charters could not have been procured originally through one

charter. Their franchises were not the same, nor were their powers; so also, as to an electric light company buying the franchises of a steam heating company, see Com. v. Harrisburg Light & Power Co., 262 Pa. 238. If the test as to merger is the ability to secure a charter by a single incorporation for the purposes indicated, then the ruling in Hey v. Springfield Water Co., supra, or Pennsylvania Utilities Co. v. Public Service Commission, supra, would never have been made.

Considering the types of companies incorporated under the different provisions of the Act of 1874, we find that many of them, while apparently incorporated for different objects and purposes, are in reality the same or similar. Clause 4 enables toll roads to be incorporated, and clause 5 toll bridges. No one would argue, since Hey v. Springfield Water Co., supra, that these companies could not consolidate either by merger or sale. So, too, toll roads and ferries, incorporated under different provisions. We might go on and add other illustrations, but these are sufficient to show that a liberal interpretation must be given the word "inconsistent." It certainly does not mean that unless the objects are entirely different in every aspect the companies applying may consolidate. Some illumination on the subject may be obtained from the word used in the Constitution, —"business." It is easily understood, and those in administrative control may quickly grasp its application to a subject-matter before them.

The business transacted, as it relates to corporate objects having similar features, must be substantially the same, or similar. When this appears, there is no inconsistency either in the purposes for which the companies are chartered or the business that is transacted.

We do not question the rule that in dealing with corporate powers we must always look to the charter for authority: Pennsylvania R. R. Co. v. The Canal Commissioners, 21 Pa. 9, 22. But we are considering here the subject of consolidation of companies, and the re-

248 Y. HAV. W. & P. CO., Aplnts., *v.* PUB. SERV. COM. et al.

Opinion of the Court.          [287 Pa.

sultant creation of a new corporation: Pennsylvania Utilities Co. v. Public Service Commission, supra. In so doing, to effectuate the legislative purpose, we should not apply to the charter power the rigid rule applicable to an exercise of that power in the conduct of its business. It is not necessary for the legislature to use exact words to define any given state of facts within which its laws, such as the one under consideration, are to operate. Apt words are all that is necessary. There may be circumstances, as the one mentioned in Pennsylvania R. R. Co. v. The Canal Commissioners, supra, or the conviction of crime, and other like illustrations, where literal construction is necessary, but that situation is not presented when dealing with a subject such as this. The legislature, acting within the constitutional right, is supreme in determining the method of forming its corporate bodies, and the elements necessary thereto.

The Constitution reads, "no corporation shall be engaged in any business other than that expressly authorized in its charter." There can be no doubt that, within broad limits, the legislature may determine what activities shall constitute a business. It is perfectly proper for it to define the business of water and water power dealing to include such cognate purposes as tend toward the same end. Thus water power companies, using their power to generate electricity may supplement this power by steam, and sell the product produced by these efforts. This undoubtedly is a general business related to the same general object or purpose. This principle is not only supported by other judicial utterances, but also accords with the fundamental thought of securing the greatest possible amount from natural resources, at the same time conserving the coal supply of the State. Such determination by the legislature of "business" does not offend the Constitution, but supplements it.

Having thus considered the principles, we will apply them to the facts in this case. The vendee is incorporated for the purpose of supplying light, heat and

power by means of electricity. Vendor was originally incorporated for the purpose of supplying water and water power. By an amendment, the right was given to develop electric power for commercial purposes. This amendment may be treated as though it were written into the original charter, and the incorporation would then be for the purpose of supplying water and water power, and developing electric power by means of water power. As a matter of fact, both companies are engaged in the manufacture and production of electricity. It will be seen, from an inspection of their charters, that they have certain powers in common and under these powers they are transacting the same or similar business. But, as correctly observed by the Superior Court, the right to furnish water to the public is not common to both companies. Appellant says that it has made no use of that power, and that it has not engaged in the business of supplying water to the public. We do not consider the agreement with the York Haven Company as affecting this question in any respect. It is, as that paper designates it, a reservation, and that is all. But the charter obligation fixes the duty. The later Act of 1895, P. L. 432, permitting such company to determine the use it shall make of the water power, does not eliminate the right in the charter, although it might prevent compulsion to perform. Though the sale of such property as here proposed may pass only such franchises as are consistent with the purchasing company, this charter right would be outstanding. It is clearly inconsistent with the business done, but is not fatal to consolidation. A sale or merger, under the Act of 1876, with its amendment, or the Act of 1909, which is practically the same, cannot take place until the company legally discards the offending power. It must be legally declared dead in the manner provided by law. Until that takes place, proceedings should be held in abeyance, or refused in case the company declines to take this step. The Act

of 1856 is pointed to as the proper procedure; there may be other ways.

But it is contended, notwithstanding this, that, if these companies may consolidate, the purchasing company acquires rights which would disturb business in a manner not contemplated by law, and which are contrary to the policy of the State. It must be remembered that the purchasing company cannot extend its rights through purchase, and can exercise only the rights of the company it buys, to the extent permitted by law: Pennsylvania Utilities Co. v. Public Service Commission, supra: Kane & Elk Railroad Co. v. Pittsburgh & Western R. R. Co., 241 Pa. 608; Punxsutawney v. T. W. Phillips Gas & Oil Co., 238 Pa. 23. A slight difference in the internal regulation and management of these corporations, if any, will not cause the merger or sale to be unworkable: Hey v. Springfield Water Co., supra; Motter v. The Electric Co., supra.

The Act of May 21, 1921, P. L. 1059, 1060, restricts competition with existing steam generating electric companies. While the hydro company may originally sell power irrespective of territorial limits, since the date of the Public Service Act it cannot at will invade new territory to the prejudice of another company in the field (Fogelsville & Trexlertown Electric Co. v. Pennsylvania Power & Light Co., 271 Pa. 237, 242); nor can it, without the commission's approval, enter a municipal subdivision now being served by another company, or accomplish the same result by a purchase of a power company. The Act of July 2, 1895, P. L. 425, must be considered to have been modified by the Public Service Law. As to outlying or unused districts, the law announced in Fogelsville & Trexlertown Electric Co. v. Pennsylvania Power & Light Co., supra, applies. A purchasing company cannot, under the vendor's power, enter the highways without the consent of the municipal authorities. Our water power is not persistent throughout the year. Each hydro plant must be supplemented by

steam. The main purpose of both is to manufacture electric current; but they cannot, under the guise of acquiring a property for the purpose of generating electricity by water power, extend, through steam construction out of proportion to the water power it supplements, their electric current generated by these steam facilities into districts not covered by their own charter.

This conclusion would seem to answer all the objections raised by the intervening appellee. The Superior Court was in error in holding the sale could not take place. We here decide this application should be granted when the parties produce evidence showing that the right to supply water, given by the York Haven Water & Power Company's charter, is legally dead. This is in entire harmony with our views when considering Shaffer v. Public Service Commission, 268 Pa. 456, and the same case, 270 Pa. 196, where a similar order as here entered was decided on. For the purpose of enabling this to be brought about, the decree of the Superior Court is reversed, as also the order of the Public Service Commission on condition that appellant proceed forthwith to surrender its right to supply water to the public, and that no certificate issue without restricting appellant's right in this respect. The record is remanded to the Public Service Commission for further proceedings not inconsistent with this opinion; costs to be paid by appellant.