Commonwealth, to use, *v.* Merchants National
Bank of Allentown, Appellant.

Argued April 21, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*George Wharton Pepper,* with him *Oliver W. Frey, Ralph H. Schatz, Isaac A. Pennypacker* and *W. B. Bodine,* for appellant.

*E. J. Fox, Jr.,* of *Fox & Fox,* with him *Robert G. Kleckner, William S. Hudders, J. Wilmer Fisher* and *Yale L. Schekter,* for appellee.

OPINION BY MR. JUSTICE LINN, June 26, 1936:

This appeal is from judgment for want of a sufficient affidavit of defense. The suit is on a guardian's bond in the sum of $60,000. The Citizens Trust Company of Allentown, hereafter referred to as the trust company, a corporation under the Corporation Act of 1874, P. L. 73, 15 PS section 1 et seq., became surety on the bond. In 1928 the trust company and the Merchants National Bank of Allentown, hereafter called the bank, united as the Merchants' Citizens National Bank and Trust Company of Allentown, a name subsequently changed to the Merchants National Bank of Allentown, hereafter called the defendant. The guardian, Fred H. Lichtenwalner, was removed by the orphans' court and was surcharged in a large sum. To recover on the bond, the minor, hav-

ing become of age, brought this suit against defendant, alleging liability in virtue of the consolidation. The defense is that there was (1) no express assumption by defendant of the surety's liability; and (2) no legal consolidation of the two corporations from which liability could be implied.

On October 31, 1928, an agreement entitled "Agreement of Consolidation between [the bank] and [the trust company] under the title of The Merchants-Citizens National Bank and Trust Company of Allentown" was executed, reciting that each party was "acting pursuant to a resolution of its Board of Directors and by a majority of said Boards, pursuant to the authority given by, and in accordance with the provisions of, an Act of the Congress of the United States entitled 'An act to provide for the consolidation of national banking associations,' approved on the 7th day of November, 1918, and amended on the 25th day of February, 1927." It was agreed that "The [bank] and [the trust company] are hereby consolidated under the charter of the said first-named bank as hereby modified and the articles of association of said first-named bank are hereby amended so as to conform with this agreement." In other words, the property of the trust company, then to cease doing business, was to be merged into or absorbed by the bank. It was agreed that the bank's capital stock be increased from $400,000 to $1,000,000; that 7,000 shares (par $100) be allotted to the "present shareholders" of the bank and 3,000 shares to the "present shareholders" of the trust company; that the "assets contributed by each of said associations shall, upon the effective date of consolidation, be passed upon and be acceptable to a committee of six, three to be appointed by the Board of Directors of each association."[1]

---

[1] The bank's shareholders agreed to "furnish net assets above all liabilities of that association equal to $1,934,901.66 of the capital, surplus and profits of the consolidated bank, and the shareholders

They agreed that "This consolidation shall become effective when it shall have been ratified and confirmed by the affirmative vote of the shareholders of each of said associations owning at least two-thirds of its capital stock outstanding . . . and shall have been approved by the Comptroller of the Currency of the United States." The agreement was executed in their corporate names[2] by their officers with the corporate seals and by the directors of each. The Comptroller of the Currency also approved.

Defendant averred, under new matter, that on June 30, 1928, prior to the execution of the agreement, the parties exchanged statements "which formed the bases for the negotiations" and which were "represented to be a true statement of the assets and liabilities of each institution as of that date" and that these statements became the basis of allotment of shares in the consolidated corporation. Defendant denied notice of the existence

of the [trust company] shall furnish net assets equal to $1,285,-220.80 of the capital, surplus and profits of the consolidated bank." They agreed that assets of either, not desired or necessary "to make up its contribution to the capital, surplus and undivided profits" should be transferred "before the effective date of the consolidation, to a trustee or trustees for the ultimate benefit of its shareholders . . ." but that if either lacked sufficient assets "to make good its proportion of capital, surplus and undivided profits . . . the shareholders . . . not having sufficient assets to make good its proportion shall pay the difference in cash."

[2] Lichtenwalner, the guardian, was president of the trust company and signed the agreement in that capacity and also as director. In 1929 he was elected chairman of the board and also a director of defendant and apparently so remained until the date when notice of the obligation in suit was given to defendant. One Helwig, who signed the bond as secretary of the trust company became trust officer of the defendant "after the consolidation." One Klotz, who signed as vice-president of the trust company became a director of defendant at the time of the consolidation. A number of the directors of the trust company at the time of the adoption of the resolution of the board authorizing the suretyship, became directors of defendant.

of the bond, and averred that if its existence had been known, the agreement of consolidation would not have been made and would not have been approved by the Comptroller of the Currency. The contract contained no provision for the express assumption by defendant of the trust company's liability. The defense rests on two propositions; first, that the consolidation was not legal; second, not being legal, assumption of liability may not be implied.

When the agreement was made in 1928, certain acts of assembly authorized the merger and consolidation of domestic corporations; among others, the Act of May 3, 1909, P. L. 408, amended April 29, 1915, P. L. 205, 15 PS sections 421 et seq. They provided for the assumption of the debts of the constituent companies,[3] thus repeating the declared policy of the law of this Commonwealth (as former statutes on the same subject had also provided) that the property of the constitutent corporations be taken cum onere. None of these acts authorized the consolidation of the trust company and the bank. Federal legislation, to the extent that Congress had power to act, did provide for the consolidation of a state bank with a national bank. Under the local law however (see the Act of April 26, 1889, P. L. 56, 7 PS section 431 et seq.: *Thorp v. Wegefarth,* 56 Pa. 82; *Kelsey v. National Bank of Crawford Co.,* 69 Pa. 426), and the federal legislation on the subject, the trust company could have been transformed into a national bank, and,

---

[3] See Act of April 29, 1915, P. L. 205: "Provided, that all rights of creditors and all liens upon the property of each of said corporations shall continue unimpaired, limited in lien to the property affected by such liens at the time of the creation of the same, and the respective constitutent corporations may be deemed to be in existence to preserve the same; and all debts not of record, duties, and liabilities of each of said constituent corporations shall thenceforth attach to the said new corporation, and may be enforced against it to the same extent and by the same process as if said debts, duties, and liabilities had been contracted by it."

it is to be noted, if that had been done, its obligations would have accompanied the transformation as provided in the enabling legislation. Both sides agree that no legislation of the Commonwealth authorized the method of consolidation adopted; they differ as to the effect of want of such authority. The plaintiff contends that as such consolidation was not prohibited, it was permitted; the defendant, that the consolidation is not "legal."[4] Plaintiff says that the trust company consolidated with the bank pursuant to the Act of Congress of February 25, 1927, clause 191, 44 Stat. 1225, 12 USCA section 34a, and that under *Casey v. Galli*, 94 U. S. 673, the consolidation was lawful under the local as well as the federal law. In the light of *Hopkins Federal Savings & Loan Assn. v. Cleary*, 296 U. S. 315, 342, the *Galli* case cannot be given the comprehensive effect, as limiting the power of the Commonwealth, attributed by plaintiff to the *Galli* case. See also *Com. v. First Nat. Bank and Trust Co. of Easton*, 303 Pa. 241, 154 A. 379.

What occurred was this. Shortly before the consolidation and apparently an element in the general transaction, a small part of the trust company's assets was delivered to a trustee for distribution to its stockholders; with that distribution we are not now concerned. The remaining assets were transferred to the defendant and, united with the assets of the bank, became the property or stock of the defendant; this property was then owned by the shareholders, those formerly shareholders in the trust company and in the bank respectively; each then

---

[4] In appellant's brief it is said: "The trust company had legal authority to become surety on a bond as it did. And if there had been a legal consolidation of the two charters, we concede that the consolidated company might have become liable for all the debts of the constitutents. Most acts authorizing such consolidations expressly so provide. But even in the absence of such express provision, it may be the necessary implication and necessary conclusion that such is the intention of the acts. We are not dealing with a legal consolidation."

had a shareholder's interest in the combined stock or property instead of in that formerly owned by each constituent corporation; to evidence the shareholder's respective fractional interests in the whole, certificates of capital stock were issued in the proportions agreed upon. The property of each corporation, as stipulated in the agreement, was united, as the agreement provided (supra) "under the charter of the [national bank] as hereby modified. . . ."

The federal legislation, while evidencing the terms and conditions of federal consent to the absorption of a state bank by a national bank, did not, and, because of the Tenth Amendment to the federal Constitution *(Hopkins Federal Savings & Loan Assn. v. Cleary,* 296 U. S. 315, supra), could not, confer authority on the trust company to consolidate its franchise and property with those of the bank. What was lacking to make the consolidation de jure, was authority from the Commonwealth, pursuant to whose law the trust company existed. The consolidation described did not, therefore, transfer to the bank the trust company's franchise to be a corporation and work its dissolution. Though it divested itself of its property, by transfer to defendant, its franchise to be a corporation remained subject to the local law. With that, however,[5] the defendant is not concerned in this suit. Defendant thereafter continued its banking business as the consolidation of the trust company and the bank under the bank's charter. Having federal consent to do what was done, defendant is here regarded as a lawfully existing national bank. But the obligation sought to be enforced was created by a Pennsylvania corporation, authorized to become surety; it was liable to be called on to perform in case of the guardian's default; the obligation existed at the time of

---

[5] The corporation was dissolved September 8, 1931, by decree of the common pleas pursuant to the Act of April 9, 1856, P. L. 293, 15 PS section 501 et seq.

the agreement of consolidation and was not discharged by what the parties did. The obligor could not have avoided performance by lawfully consolidating with another corporation because the consolidating statutes imposed liability as a condition of consolidation. The Commonwealth[6] and Congress[7] had provided that a trust company might be transformed into a national bank; if that had been done, the liabilities of the trust company would have been assumed by the national bank: *Metropolitan Nat. Bank v. Claggett,* 141 U. S. 520; see also *Michigan Ins. Bank v. Eldred,* 143 U. S. 293. If the trust company first had been converted into a national bank, it might then have been consolidated with the bank pursuant to federal legislation,[8] and the obligations of both would have been assumed by the consolidated bank.[9] The local law and the federal law at the time therefore furnished a method of making the desired consolidation, but the parties ignored this method and attempted to reach in one step a development for which the law required two. The consolidating procedure, in its Pennsylvania aspect, was irregular but certain consequences nevertheless resulted. The parties to the consolidation, when confronted with an obligation like that now involved, must meet it as if they had complied with the statutes which would have enabled them to consolidate. If, for the purposes of this suit, we accept its contention that the consolidation was not "legal" in the respect indicated, defendant will not be permitted to deny its effect in fact: *Cochran v. Arnold,* 58 Pa. 399, 405; *Hamilton v. Clarion M. & P. R. Co.,* 144 Pa. 34, 23 A. 53;

---

[6] Act of April 26, 1889, P. L. 56, 7 PS section 431 et seq., supra.

[7] December 23, 1913, clause 6, section 8, 38 Stat. 258, 12 USCA section 35.

[8] November 7, 1918, clause 209, 40 Stat. 1043, 12 USCA sections 33, 34.

[9] *First Nat. Bank of Tulsa v. Hoover* (Texas) 269 S. W. 262; *U. S. F. & G. Co. v. Citizens' Nat. Bank,* 13 F. (2d) 213.

*Tibby Bros. Glass Co. v. P. R. R. Co.*, 219 Pa. 430, 68 A. 975.

As statutes authorizing consolidation generally provide that the consolidated corporation must assume the liabilities of the constituent corporations, and as our statutes have long so required, the question is whether the policy of the law, so declared, compels a decision that in the case of de facto consolidation of the character described, the obligations of the constituents are likewise assumed by the consolidated corporation. It is immaterial that, so far as it could, the federal government had consented to the acquisition by the bank of the trust company's property. By the transaction, the bank's assets were increased by those received from the trust company in exchange for the resulting stock interests in all the shareholders of the consolidated corporation. While there is general agreement in applying the rule of implied liability in cases of merger or consolidation or purchase the courts have not always agreed on the reasons for doing so.[10] This appeal does not require discussion of these reasons. We cannot adopt a rule that would permit the repudiation of lawful obligations by the failure of two corporations to observe required procedural steps in uniting their property under one charter. It is sufficient to say that the declared policy of the law of this Commonwealth governing consolidation de jure re-

---

[10] Cf. *American Ry. Express v. Com.*, 190 Ky. 636, 228 S. W. 433; *Jennings Neff & Co. v. Crystal Ice Co.*, 128 Tenn. 231, 159 S. W. 1088; *Altoona v. Richardson Gas & Oil Co.*, 81 Kan. 717, 106 P. 1025; *Chicago, I. &. S. R. Co. v. Taylor*, 183 Ind. 240, 108 N. E. 1; *American Ry. Express v. Downing*, 132 Va. 139, 111 S. E. 265; *Goodwin & Jean v. American Ry. Express*, 220 Mo. App. 695, 294 S. W. 100; *Valley Bank v. Malcolm*, 23 Ariz. 395, 204 P. 207; *Gibson v. American Ry. Express*, 195 Iowa 1126, 193 N. W. 274; *Shadford v. Detroit, etc., Ry.*, 130 Mich. 300, 89 N. W. 960; *Green v. Michigan U. R. Co.*, 159 Mich. 58, 123 N. W. 607; *Gueringer v. St. Louis, B. & M. Ry. Co.* (Texas), 23 S. W. (2d) 704; *West Texas Refining, etc., Co. v. Commissioner of Internal Revenue*, 68 F. (2d) 77, 81.

quires similar assumption of liabilities by consolidations in fact.

Judgment affirmed.