## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* METROPOLITAN EDISON CO.*

No. 486.   Argued March 10, 1939.—Decided April 3, 1939.

*Miss Helen R. Carloss,* with whom *Solicitor General Jackson, Assistant Attorney General Morris,* and *Mr. Sewall Key* were on the brief, for petitioner.

*Mr. Maurice Bower Saul,* with whom *Mr. Bradford S. Magill* was on the brief, for respondent in No. 486.

---

* Together with No. 487, *Helvering, Commissioner of Internal Revenue,* v. *Pennsylvania Water & Power Co.,* also on writ of certiorari to the Circuit Court of Appeals for the Third Circuit.

*Mr. Edwin M. Sturtevant,* with whom *Mr. Clyde T. Warren* was on the brief, for respondent in No. 487.

Mr. Justice Roberts delivered the opinion of the Court.

These cases present the question whether, under the Revenue Acts of 1926 and 1928,[1] a Pennsylvania corporation may deduct unamortized bond discount and expense in connection with redemption of the bonds of a subsidiary, all of whose assets it had previously acquired pursuant to local law. The court below answered this question in the affirmative.[2] By reason of a direct conflict of decision we granted the writ of certiorari.[3]

The respondent in No. 486 is a Pennsylvania corporation supplying electric light and power in that state and also operating, through subsidiaries, a system which serves communities in Pennsylvania and Maryland. It filed consolidated returns for itself and its subsidiaries for 1927 and 1928. During 1928 the company retired certain bonds of Pennsylvania corporations which were formerly subsidiaries whose obligations the taxpayer had assumed when it took over their assets by transfers effected pursuant to an Act of the General Assembly of April 29, 1874, as amended and supplemented.[4] When these obligations were redeemed there existed, with respect to them, unamortized discount and expense aggregating $752,-481.26, which the company in its return deducted from gross income. The Commissioner ruled against the deduc-

[1] Revenue Act of 1926, §§ 200 (d), 212 (b), 232 and 234 (a) (1) (2) and (4), 44 Stat. 9, 10, 23, 41–42; Revenue Act of 1928, §§ 23 (a) (b) and (f), 41, 42, 43, 48, 45 Stat. 791, 799–800, 805, 807.

[2] 98 F. 2d 807, 812.

[3] See *General Gas & Electric Corp.* v. *Commissioner,* 98 F. 2d 561, in which certiorari was also granted, decided *post* p. 530.

[4] Act of April 29, 1874, P. L. 73, § 23, amended by Act of April 17, 1876, P. L. 30, § 5, and Act of June 2, 1915, P. L. 724, § 1. Purdon's Pa. Stats. Tit. 15, § 595.

tion and determined a deficiency. The Board of Tax Appeals sustained the Commissioner.[5] The Circuit Court of Appeals reversed the Board, holding that the transactions whereby the taxpayer acquired the assets and assumed the liabilities of its former subsidiaries, pursuant to the statute, constituted a merger, as a consequence of which the subsidiaries ceased to exist by operation of law whereas the taxpayer continued to exist and became liable for the subsidiaries' debts both under contract and by operation of law. The court, therefore, held that the unamortized discount and expense was deductible in respect of the subsidiary's bonds.

In 1923 the respondent in No. 486 desired to erect a generating plant for electric energy. Wishing to finance it by a separate bond issue the respondent organized Metropolitan Power Company, a Pennsylvania corporation, as a wholly-owned subsidiary. The taxpayer purchased, guaranteed, and sold, at the same price it had purchased, $3,250,000 of bonds of the subsidiary; purchased all of its stock and loaned it on open account approximately $3,000,000. The Power Company held no public franchises and, under a contract with the taxpayer, sold all of its electricity to the latter at a price sufficient to enable it merely to earn the costs of operation and other charges, including depreciation, taxes, and interest. In 1927, pursuant to State authority, the Power Company sold all its assets subject to its liabilities to the taxpayer, a deficit from operations being charged against the taxpayer's surplus. At the time of the transfer the taxpayer surrendered the stock of the Power Company for cancellation and the latter became inactive and was dissolved in 1928. The taxpayer assumed liability for the outstanding bonds of the Power Company payment of which it

---

[5] 35 B. T. A. 1110.

had originally guaranteed and, during 1927, called them for redemption and redeemed them. At the time of the redemption there remained unamortized discount and expense incurred in issuing the bonds aggregating $308,-097.90 which the taxpayer deducted from its gross income. The Commissioner ruled against the deduction and the Board of Tax Appeals sustained him.[6] The Court of Appeals reversed the Board, holding that, while the transaction was not consummated under the state statute it nevertheless was under state law a *de facto* merger, and the taxpayer was accordingly entitled to the deduction.

The respondent in No. 487 is a Pennsylvania corporation operating a hydroelectric plant at Holtwood, Pennsylvania. In 1924 it desired to provide its customers with a more adequate supply by an auxiliary steam power plant. As its corporate powers did not permit steam generation of electricity it caused the incorporation of a Pennsylvania company, known as Holtwood Power Company, all of whose shares were purchased and owned by the respondent. With the proceeds of the sale of the Power Company's stock and those of a bond issue the steam plant was erected. This plant sold all its output to the taxpayer which agreed, in return, to pay the Power Company's costs and expenses and an allowance for depreciation, and to pay a sum to provide for amortization of debt, discount, and security issue expense, and the expenses attending the issue, registration and transfer of the capital stock and bonds, all interest on bonds and other indebtedness, and a sum sufficient to provide a net return of eight per cent. on the Power Company's stock. The steam plant was managed by the taxpayer's officers and employes without compensation and was operated as a department of the taxpayer. In 1927 the taxpayer

---

[6] 35 B. T. A. 1110.

surrendered certain corporate powers so as to be in a position to effect a merger or consolidation with its subsidiary under the Pennsylvania statutes.[7] Thereupon the Power Company conveyed all of its assets and franchises to the taxpayer pursuant to the Pennsylvania Act of 1874 as amended, the sole consideration being the delivery to the subsidiary of all its capital stock held by the taxpayer and the assumption by the taxpayer of the subsidiary's indebtedness. The subsidiary ceased to exist. In 1928 the taxpayer retired the bonds of its former subsidiary and charged off unamortized discount and expense in respect of them in the sum of $145,159.52 and, in its income tax return for that year, claimed a small deduction for amortization for a portion of the year prior to the retirement, and a deduction of the balance of the sum above mentioned as of the date when the retirement took place. The Commissioner disallowed the deduction and determined a deficiency. The Board of Tax Appeals sustained the ruling.[8] The Circuit Court of Appeals reversed the Board.

The petitioner concedes that if there has been a true merger or consolidation whereby the identity of the corporation issuing the bonds continues in the successor and the latter becomes liable for the debts of the former by operation of law, the successor may deduct amortization of discount and expense in respect of bonds issued by its predecessor as well as unamortized discount and expense on any of such bonds retired prior to maturity.[9] The

---

[7] See *York Haven Water & Power Co.* v. *Public Service Comm'n*, 287 Pa. 241, 249; 134 Atl. 419, 421.

[8] 36 B. T. A. 467.

[9] *American Gas & Electric Co.* v. *Commissioner*, 85 F. 2d 527; *American Gas & Electric Co.* v. *United States*, 17 F. Supp. 151; *New York Central R. Co.* v. *Commissioner*, 79 F. 2d 247; *Western Maryland Ry. Co.* v. *Commissioner*, 33 F. 2d 695; Illinois Power & Light Corp. *v.* Commissioner, 33 B. T. A. 1189; Connecticut Electric Service Co. *v.* Commissioner, 35 B. T. A. 444.

rule is not applicable upon a mere sale by one corporation of all its assets to another which assumes the liabilities of the former.[10]

The contention of the petitioner is that the transactions in issue fall within the latter category. The respondents, on the other hand, insist that, in the light of the applicable statute of Pennsylvania and the decisions of her courts, the transactions constituted mergers in the proper acceptation of that term. The question, then, is solely one respecting the law of Pennsylvania.

Until the complete revision of the corporation laws of the Commonwealth in 1933 there were but two statutes available to corporations seeking to merge or consolidate. The Act of April 29, 1874, § 23, *supra*, so far as material, provides that any corporation, with the consent of its stockholders, may "sell, assign, dispose of and convey to any corporation created under or accepting the provisions of this act, its franchises, and all its property, real, personal and mixed, and thereafter such corporation shall cease to exist, and the said property and franchises not inconsistent with this act, shall thereafter be vested in the corporation so purchasing as aforesaid. . . ." The Act of May 3, 1909,[11] permits what it terms a merger but what is in truth a consolidation to be effected by a joint agreement of two or more corporations approved by the stockholders setting forth the terms and conditions of the merger and consolidation and providing for the organization of a new corporation to which the franchises and property of the consolidating corporations are to be transferred. This act contemplates the issue of letters patent to the consolidated corporation, and the issue of new stock by it, in lieu of that of the old. The procedure

---

[10] *Turner-Farber-Love Co.* v. *Helvering*, 62 App. D. C. 369; 68 F. 2d 416; *American Gas & Electric Co.* v. *Commissioner, supra; American Gas & Electric Co.* v. *United States, supra.*

[11] Purdon's Pa. Stats. Tit. 15, § 421, etc.

under the Act of 1874 has repeatedly been referred to in the decisions of the Supreme Court of the Commonwealth as the "short form" and that under the Act of 1909 as the "long form" of merger.[12]

Inasmuch as the transfer of the franchises and assets is authorized by statute, it seems reasonably clear that the transferee is, as matter of law, liable for the obligation of the transferor. The cases indicate that this is so.[13] The petitioner argues and the Circuit Court of Appeals for the Second Circuit has held to the contrary, in reliance on *Merwine* v. *Mt. Pocono Light & Imp. Co.*, 304 Pa. 517; 156 Atl. 150. That court thought the case indicated that the liability, if any, of the transferee was not under the statute but was only that of a fraudulent transferee under 13 Eliz., chap. 5. Action for a tort had been brought against the transferor prior to a transfer under the Act of 1874. After the conveyance the defendant filed a suggestion that the property had been conveyed in proceedings under the Act, that the defendant had ceased to exist, and that the action should be abated. The plaintiff sought to substitute the transferee as defendant. The trial court denied substitution and abated the action. The Supreme Court held that the termination of corporate existence of the defendant under the Act of 1874 did not abate the action, but that if the plaintiff recovered a judgment she could "levy wherever defendant's assets liable for the judgment may be found," which seems to

---

[12] See *York Haven Water & Power Co.* v. *Public Service Comm'n,* 287 Pa. 241, 246; 134 Atl. 419, 420; *Buist's Estate,* 297 Pa. 537, 541; 147 Atl. 606, 607; compare Stockley Penna. Corp. Laws 1933, pp. 39, 104; *Pennsylvania Utilities Co.* v. *Public Service Comm'n,* 69 Pa. Super. Ct. 612.

[13] *Berkovitz's Appeal,* 319 Pa. 397, 407; 179 Atl. 746 at 751; *Commonwealth* v. *Merchants National Bank,* 323 Pa. 145, 153; 185 Atl. 823, 827.

us to mean no more than that the assets after the conveyance remained subject to the transferor's liabilities. A transfer fully authorized by statute cannot be a fraudulent conveyance within the 13 Eliz.

We are of opinion that a transfer without valuable consideration, with the intent that the transferor shall, as the statute provides, cease to exist, made in accordance with the statute, has all the elements of a merger and comes within the principle that the corporate personality of the transferor is drowned in that of the transferee. It results that the continuing corporation may deduct unamortized bond discount and expense in respect of the obligations of the transferring affiliate.

A somewhat different question arises with respect to the transfer of assets of Metropolitan Power Company. It is admitted that this transfer was not made in accordance with the terms of the Act of 1874. No franchises were transferred because the Metropolitan Power Company held no public franchises of any kind. The transfer was merely of assets with the assumption of all the liabilities by the transferee. It is important to note, however, that amongst the liabilities assumed were bonds on which the parent company was already liable as guarantor. The court below has held, and we concur, that, under the law of Pennsylvania, the transfer in question constituted a *de facto* merger, even though the transfer did not comply with all the provisions of the Act of 1874,[14] and that, as matter of law, the taxpayer would be liable for the debts of the transferor.

*Judgments affirmed.*

[14] *Commonwealth* v. *Merchants National Bank, supra,* p. 152.