**FIRST NAT. BANK IN HOUSTON v. SCO-FIELD, Collector of Internal Revenue.**

Civ. A. 6054.

United States District Court
S. D. Texas, Houston Division.

March 21, 1952.

———◇———

Edward S. Boyles, Bruce Billingsley, and M. U. S. Kjorlaug, of Houston, Tex., for plaintiff.

Brian Odem, U. S. Atty., and W. G. Winters, Ass't U. S. Atty., of Houston, Tex., for defendant.

CONNALLY, District Judge.

The taxpayer and plaintiff, First National Bank *in* Houston, sues the Collector to recover allegedly excessive income taxes paid for the year 1944. The parties have stipulated all pertinent facts, to which stipulation I refer, and, save for one minor evidentiary issue hereinafter mentioned, have reduced the action to a single issue. The controversy comes about in this fashion. The First National Bank *of* Houston (the "Old Bank" hereafter, as distinguished from the plaintiff taxpayer, the "New Bank" hereafter) operated as a banking institution in this city for a great many years. Beginning in the year 1930, and for several years following, it sustained serious net losses in its banking operations. It became apparent in 1932 that the Old Bank was on the verge of collapse. To avert this catastrophe a number of its stockholders pledged their personal credit and their private fortunes, to save it.

This was accomplished by the creation of three new corporations, and a series of intricate transfers of securities and other assets between the three new corporations and the Old Bank, the details of which I consider it unnecessary to detail. As result of this action, with a substantial loan from the Reconstruction Finance Corporation, the Old Bank weathered the storm and began voluntary liquidation on May 13, 1933. At the same time, the New Bank was organized. The latter received from the Old Bank all of its sound assets and liabilities, and since May, 1933, has carried on its regular banking business. The Old Bank continued in liquidation from May, 1933, until its dissolution in 1942. The transaction was treated as a tax-free reorganization.

Among the various assets which the New Bank received from the Old were a number of notes which the Old Bank had charged off as bad debts between 1931 and 1935, in which no tax benefit was derived by the Old Bank by reason of such charge-

offs. Some $41,000 of such notes were collected by the New Bank in 1944. Contending that it is "the taxpayer" who received no tax benefit from such charge-off, the plaintiff New Bank contends that it is entitled under Sec. 22(b) (12) of the Internal Revenue Code, 26 U.S.Code, 1946 Ed. § 22, to exclude such collections from its gross income; or, more accurately, recognizing that it is a corporate entity distinct from that of Old Bank, the plaintiff contends that it is its alter ego, that the two are actually a single banking institution, with the New picking up where the Old left off. The Government, of course, takes the contrary view, pointing to the fact that while the two corporations had the same stockholders, and the New ultimately succeeded to the assets and liabilities of the Old, the two filed separate income tax returns for several years (Old Bank, while in the process of dissolution, filed returns from 1933 to 1941, and made some of the charge-offs in question; the New Bank filed returns covering its operations from date of incorporation in 1933 to the present time); and argues that, despite the close relationship, the New Bank is not the same taxpayer as the Old.

Plaintiff relies principally upon Western Md. Ry. Co. v. Commissioner of Internal Revenue, 4 Cir., 33 F.2d 695, and Tait, Collector, v. Western Md. Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405, the former holding in substance that where a corporation, owning all of the stock of a number of subsidiary corporations, is consolidated therewith, and assumes liability for certain bonds of the subsidiary, it may deduct from gross income the amortized portion of the bond discount arising from the sale of the bonds initially by the predecessor company. Substantially to the same effect, though not cited by plaintiff, is Helvering v. Metropolitan Edison Co., 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957. These authorities turn not so much on the question of identity of the taxpayer, but rather on the fact that the deduction claimed actually constituted an expense of the successor corporation in the form of deferred payment of interest.

Closer home is New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, presenting the question as to whether a new corporation organized for the purpose of taking over the assets, business and liabilities of the old, with the same stockholders and creditors, is entitled to a tax benefit which would have accrued to the old corporation by reason of the latter's having sustained net losses in preceding periods, under Sec. 204(b) of the Revenue Act of 1921. There, as here, the question was whether the new corporation was "the taxpayer" who had sustained the loss and hence was entitled to the tax advantage. The Court there proceeds upon the hypothesis that the income tax is levied upon gross income, and deductions are allowed as a matter of legislative grace; and only where there is clear provision to that effect. The Court then comments that for reasons of their own the stockholders had turned from the old corporation and cast their lot with the new, apparently because they considered it to their advantage to do so; and having availed themselves of the advantages flowing from the changes in corporate arrangement, it came with poor grace from them to seek to avoid what minor disadvantages might ensue. As the transaction was voluntary and contractual, the Court holds they are separate entities within the purview of the pertinent section of the Revenue Act, and that the new could not claim the benefit which would have accrued to the old had it continued.

A similar case is Jones v. Noble Drilling Co., Inc., 10 Cir., 135 F.2d 721, 724, wherein, upon merger of a parent and subsidiary corporation, the new corporation undertook to assert a similar tax benefit which would have accrued to the old, the Court states:

"The surviving corporation was a separate and distinct corporation into which the parent had been merged. The right to a deduction is not transferable. It can be claimed only by the taxpayer to which it accrues and in determining the right to deductions, separate corporate entities will not be disregarded." (Citing cases.)

Authorities from the Tax Court are to the same effect. Nat'l Bank of Commerce of Seattle v. Commissioner, 12 T.C. 717, and Union Nat'l Bank of Laredo v. Commissioner, 2 T.C.M. 922. In my opinion, the weight of authority clearly supports the position of the Government.

At the time of trial, the plaintiff offered in evidence a copy of a Revenue Agent's report, touching the affairs of the plaintiff, relative to the years 1939 and 1940, dealing with the disallowance by the Commissioner of a charge-off, as bad debts, of certain obligations of one of the three corporations which served as a conduit for the securities from the stockholders of the Old Bank, as mentioned in the earlier paragraphs hereof. Plaintiff argues that the position which the Government took at that time and in that controversy is inconsistent with its present position. The defendant objected to the introduction of the report on the ground that it was immaterial and irrelevant to the present controversy. While I have some doubt upon the relevancy of the report, I have considered it and find nothing therein contrary to the views hereinabove expressed.

Clerk will notify counsel, who will present decree within 20 days.