**338**

**HUTCHENS METAL PRODUCTS, INC.,**
Plaintiff,

v.

**E. O. BOOKWALTER, Defendant.**

**No. 1387.**

United States District Court
W. D. Missouri, S. D.

June 30, 1959.

------◆------

Miller, Fairman & Sanford, Springfield, Mo., for plaintiff.

Edward L. Scheufler, U. S. Atty., O. J. Taylor, Asst. U. S. Atty., Kansas City, Mo., Charles K. Rice, Asst. Atty. Gen., James P. Garland, Lyle M. Turner, Thomas E. Smail, Jr., Attorneys, Dept. of Justice, Washington, D. C., with them on the brief, for defendant.

R. JASPER SMITH, District Judge.

This is an action to recover income taxes alleged to have been overpaid by plaintiff for the calendar year 1951.

The principal question involved is whether plaintiff, as the surviving corporation in a statutory merger of two separate corporations, in computing its net income for the calendar year of 1951, is entitled to carry over and deduct net operative losses sustained by the merging corporation for 1950 and for that portion of 1951 prior to the date of the merger, under the provisions of Sections 23(s) and 122(b) (2) (B) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 23(s), 122(b) (2) (B).

The facts, which are found largely by stipulation, are as follows:

Plaintiff, Hutchens Metal Products, Inc., is a Missouri corporation with its principal office in Springfield, Missouri. It was originally incorporated in 1926 for the purpose of manufacturing and selling various products. Hutchens Implement Sales Company was incorporated as a Missouri corporation with its principal office in Springfield, Missouri, in 1946. At the time of its organization its principal purpose was to sell the articles manufactured by plaintiff. During the entire period of organization of the two companies as separate entities, the registered agent for each of them was the same, their principal offices were the same, and except for one slight variation,

the stockholders were the same. Hutchens Metal Products, Inc. had 1,101 shares of stock outstanding of which 1,098 were owned by Charles T. Hutchens and wife, and 3 were owned by Ludy Wyrsch, a key employee. Hutchens Implement Sales Company had 500 shares of stock outstanding of which 425 were owned by Charles T. Hutchens and wife, 25 shares by Ludy Wyrsch and 50 by the officers of the Citizens Bank of Springfield, Missouri, where the Company obtained its financing, so that there could be bank representation on the corporation's Board of Directors. Prior to the merger Hutchens Metal Products, Inc. was engaged in the manufacturing of farm implements, farm wagons, trailers, tank trailers, and other items of similar nature. Hutchens Implement Sales Company sold the manufactured products of plaintiff, and also did some manufacturing.

In 1947, Hutchens Metal Products, Inc. leased one of its factory buildings in Springfield, Missouri, to Trailmobile, Inc., and thereupon ceased the manufacture of gasoline tank semi-trailers. It continued to manufacture farm wagons and farm implements on other premises in Springfield until on or about October 1, 1948. In 1948 it built a large factory for the manufacture of farm implements, wagons, equipment and related farm equipment items at Lamar, Missouri. Before the building was completed it decided not to expand its manufacturing activities in Lamar, and it leased the building and equipment there to Farm and Tractor Implement Specialties Company, a Michigan corporation, for a ten-year period commencing in August, 1948. Shortly thereafter, Trailmobile, Inc. desired to expand its manufacturing activities, and in October, 1948, leased from Hutchens Metal Products, Inc. certain additional buildings and equipment owned at Springfield, where farm wagons and farm equipment were being manufactured. Thereafter, the manufacturing of farm machinery and implement items ceased in Springfield.

On or about May 1, 1949, Farm and Tractor Implement Specialties Company, the operator of the Lamar plant, became bankrupt, and the Sales Company leased the Lamar plant and its equipment, purchased the inventory, and proceeded to operate the manufacturing establishment there as the successor and assignee of Hutchens Metal Products, Inc. From October, 1948, through 1951, Hutchens Metal Products, Inc. engaged in no manufacturing activities whatever, its income during said period being from the rental of its properties and manufacturing facilities. However, from May 1, 1949, until on or about June 21, 1950, Hutchens Implement Sales Company, the merging corporation, did engage in manufacturing and sales activities. On the June date in 1950, following a sale of the building and equipment at Lamar, the Sales Company terminated its manufacturing activities there.

After the sale of the Lamar property, the remaining manufacturing equipment which was retained by the companies was returned to the principal office of the company at 1301 College Street in Springfield. There was limited manufacturing and sales activity, and efforts were made to develop certain patented farm implements. These efforts continued until about 1954, when it was learned that the devices were not patentable and their further development was abandoned.

On April 30, 1951, the two corporations were merged under the provisions of The General and Business Corporation Act of Missouri, Sections 351.410–351.455, V.A.M.S., with Hutchens Implement Sales Company the merging corporation and Hutchens Metal Products, Inc. the surviving corporation. Under the appropriate Missouri statute, Section 351.450(3), supra, "Such surviving or new corporation (had) all the rights, privileges, immunities, and powers and (was) subject to all the duties and liabilities of a corporation organized under this chapter * * *." Under the Articles of Merger the capital stock of the

surviving corporation was taken at $200 per share book value, and the capital stock of the merging and nonsurviving corporation Hutchens Implement Sales Company was taken at par value of $20 per share. The merging corporation's stock was converted into that of the surviving corporation on the basis of one share of stock of the surviving corporation for ten shares of stock of the merging corporation. The name of the surviving corporation was not changed; the amount and par value of its authorized capital stock was not revised; and its business purposes were not extended. After the merger, plaintiff operated the businesses formerly handled by the two previous corporations in the same fashion as before.

In its income tax return for the first taxable year after the merger, that is, for the taxable year ending December 31, 1951, the amount of tax shown on plaintiff's return and paid therewith was $5,893.92. Plaintiff contends that the correct amount of its tax for that year is $4,399.37, the difference resulting from allowance of a net operating loss deduction of Hutchens Metal Products, Inc. of $4,823.63, which had not been shown by plaintiff on its return. Plaintiff claims this amount on the basis that it was incorporated in the Internal Revenue Agent's report of September 22, 1954, and the Internal Revenue notice of deficiency of November 18, 1954.

The total amount of the income tax assessed against plaintiff for the taxable year was $16,599.13. This resulted from disallowance of a claimed net operating loss carry-over of the sum of $28,242.93, being the total of the net operating losses of Hutchens Implement Sales Company for 1950 and 1951. Plaintiff paid the resulting tax deficiency. It then claimed a refund which was disallowed, and it thereafter instituted the present action.

Plaintiff contends that the surviving corporation in a statutory merger as distinguished from a new corporation in other kinds of reorganization, under the peculiar facts and circumstances as they exist here, is entitled to carry over and deduct losses sustained in prior years by the merging corporation.

It should be pointed out that prior to the merger, the two corporations were very closely related. In the beginning, Hutchens Metal Products, Inc. engaged in manufacturing and selling. For a relatively short period after its organization, the sales company limited its activities to selling products manufactured by the original company. During the years in question, however, the sales company was engaged in both manufacturing and selling, as well as promotion and development activities. Not only were the stockholders substantially identical as heretofore mentioned, the officers and directors of each corporation were in general the officers and directors of the other. It is apparent that the two corporations were economically integrated business-wise. It is also apparent from the record made by testimony shortly prior to the formal submission of this case that for a period of several months after the merger, the business activity of the surviving company was identical with the merging company except for certain additional income from rents. It must be noted, of course, that the net earnings from which the carry-over was deducted were derived in 1951 at least from certain long term capital gains and rental income.

This case presents vexing problems of interpretation of the appropriate provisions of the Internal Revenue Code of 1939. Two broad general lines of authority have developed in the interpretation of the Code provisions under consideration here. Relying on New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, and cases following it, the defendant argues that separately chartered corporations are not the same taxable entity, and hence plaintiff cannot recover. Plaintiff on the other hand, relying on Helvering v. Metropolitan Edison Co., 1939, 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957, and cases following it, claims that a corpora-

tion resulting from a pure statutory merger is treated as the same taxable entity as its constituents to whose legal attributes it has succeeded by operation of state law. In the wide area between those two extreme statements there has developed a confusion of authority where only one conclusion is manifest. That conclusion is that notwithstanding broad general statements, each case is decided on the particular facts in order to avoid manifest injustice.

As an illustration: This case was ready for submission in 1956. At that time both parties reported that the case of Libson Shops, Inc. v. Koehler, 8 Cir., 1956, 229 F.2d 220, was pending on certiorari in the United States Supreme Court; and that the issues were so closely related to the issues in the present case that it would be advantageous to defer submission until that case had been decided. After the Supreme Court announced its decision in 1957, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, both parties pointed to the decision as authority for the positions they are taking. Plaintiff contends that in its application to this situation, the decision reiterated the rule of Helvering v. Metropolitan Edison Co. and approved Newmarket Manufacturing Co. v. United States, 1 Cir., 1956, 233 F.2d 493; Gallo Winery v. Commissioner, 9 Cir., 1955, 227 F.2d 699; and Stanton Brewery, Inc. v. Commissioner, 2 Cir., 1949, 176 F.2d 573. Defendant on the other hand, pointing to both the opinions of the Court of Appeals and the Supreme Court, argues that New Colonial Ice Company v. Helvering is expanded; that under that rule if corporations are separately organized, and if they filed separate income tax returns prior to the merger, and if the income against which they attempt to offset the loss carry-over is derived from some source other than the precise activities from which the loss occurred, there can be no application of the statute in any event.

It must be noted that neither Judge Vogel in the Court of Appeals, nor Mr. Justice Burton in the Supreme Court, expressly disapproved the announcements in any of the decided cases. Rather, they distinguished their application, and by inference at least ruled that all of those cases were authority for the facts which they covered. Under these circumstances it becomes a responsibility here to examine all of them, to compare the facts in this case to the facts recited in those opinions, and to attempt to reconcile them.

We start with the premise, not criticised by the Supreme Court, that in Newmarket Manufacturing Co. v. United States, an interpretation of Helvering v. Metropolitan Edison Co. reads as follows: "What the Court was saying, of course, was that the transferee in a statutory merger should be deemed to be continuing in itself the corporate life of the now-defunct component, and that it followed from this conceptual identity that the two corporate entities were to be treated for a substantive purpose in the income tax as the same taxpayer." [233 F.Supp.2d 499.] This is substantially the view taken by Stanton Brewery v. Commissioner and Gallo Winery v. Commissioner, both of which were cited by Judge Vogel in the Court of Appeals in Libson and not disapproved except as they might have been construed to be applicable to the particular facts in Libson.

I have studied both Libson opinions with great care. In both of them there are certain general standards that on first glance appear to be contrary to Newmarket Manufacturing Co. v. United States. In both, however, they are careful not to disapprove the philosophy of those cases where the factual situation justifies it. In Libson there were sixteen separate corporations organized to operate sixteen separate retail establishments. Twelve were in Missouri; four were in Illinois. The seventeenth company was organized to provide management services for them. At the time of merger, the amount and par value of the stock of the surviving corporation was revised and its corporate purposes expanded. Although the entire business

was then conducted as a single enterprise, the various stores were separately administered, at least to the extent that prior to the merger three of the sales corporations showed net operating losses, and it was possible to establish that each of them after the merger continued to suffer a net operating loss. Furthermore, Judge Vogel stated (229 F.2d loc. cit. 227): "We find it particularly difficult to say that two legal entities brought into existence by the laws of the State of Illinois are now identical with and have become a creature brought into existence by the laws of Missouri." And he likens it to a case where seventeen individuals, previously independent, could pool their activities into a single enterprise.

No such situation exists here. I cannot read the two Libson cases as saying that the philosophy of Newmarket, Stanton and Gallo concerning the basic effect of a pure statutory merger is completely erroneous. Rather, I read them as saying that that philosophy is erroneous when it is used to the exclusion of any other criterion. Furthermore, I do not understand that Mr. Justice Burton has ruled that simply because separate income tax returns before merger were filed by the two corporations, in the absence of other circumstances, no loss carry-over is permitted after merger. Rather, I read the opinion as saying that this circumstance is an element for consideration along with all the other facets of the case.

Here are two typical, close family corporations. The officers are the same. The stockholders are substantially the same. Notwithstanding defendant's persistent assertion that one of them did nothing but sales, the record indicates that their activities were substantially the same. Rather clearly, the surviving corporation carried on essentially a continuing enterprise. Prior to merger they had operated substantially a single business. There is no indication that the merger was prompted by a desire for tax evasion or avoidance in any way.

■ Nothing in the record indicates that in due course the sales company would not have been entitled to a carry forward if no merger had been effected. There is no indication and no showing that any tax advantage accrued as a result of the merger that would not have been available in due course without it. Nothing in the record indicates a lack of continuity of business sufficient to deprive them of the tax relief to which they otherwise would have been entitled.

Defendant attaches considerable apparent importance to the fact that there were temporary interruptions in the various business activities of the two companies, resulting from changes in location, leasing of certain equipment, bankruptcy of others, and the like. Although not parallel on the facts by any means, the case of Penton v. United States, 6 Cir., 1958, 259 F.2d 536, is authority for the proposition that continuity of business is not destroyed by temporary cessations of certain types of business activity.

It follows that plaintiff is entitled to recover in this action.

■ Defendant further insists that part of plaintiff's claim for refund is barred by the statute of limitations for claims for refund contained in Section 322(b) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 322(b) (1). The position is predicated on the fact that the income tax return for 1951 was timely filed on March 15, 1952, and $5,893.92 in tax was paid therewith. Additional tax for the year 1951 in the amount of $10,705.21 was paid on December 2, 1954. Plaintiff's claim for refund was filed July 25, 1955. Defendant urges that since taxpayer did not file its claim for refund within three years from the time its return was filed, any possible refund is limited to the amount of tax which was paid within two years prior to filing the claim. This contention is well taken.

In Bechelli v. Hofferbert, D.C.D.Md. 1953, 111 F.Supp. 631, it was held that where a taxpayer's claim for refund was

not filed within three years under this section, the taxpayer was entitled to refund only to the extent that the alleged overpayment had been made within two years prior to the date of the petition for refund. See also Jones v. Liberty Glass Co., 1947, 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142; Kavanagh v. Noble, 1947, 332 U.S. 535, 68 S.Ct. 235, 92 L.Ed. 150; United States v. Dubuque Packing Co., 8 Cir., 1956, 233 F.2d 453.

Judgment will be entered for plaintiff for $10,705.21, the amount paid on December 2, 1954, together with interest as authorized by law. The parties will agree on a form of judgment entry to be filed within twenty days. It is so ordered.